# PRICE MUNICIPAL CORPORATION v. JAYNES et al.

No. 7080. Decided March 31, 1948. (191 P. 2d 606.)

See 56 C. J., Searches and Seizures, sec. 17. Right of a municipal corporation to review of an unfavorable decision in an action or prosecution for violation of a municipal ordinance, see note, 116 A. L. R. 120. See, also, 37 Am. Jur. 785.

*Ruggeri & Gibson,* of Price, for appellant.

*Rawlings, Wallace & Black, Woodrow D. White* and *Mc-Kay, Burton & White,* all of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal by the City of Price from a judgment of the Seventh District Court dismissing the complaint in an action prosecuted by the City of Price against the defendants for violation of Price City Ordinance No. 1050.

Defendants were convicted in the City Court of Price of violation of the ordinance above mentioned. That ordinance provides as follows:

"Section 1. The right of the people of the City of Price, County of Carbon, State of Utah, to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.

"Section 2. Any person violating any of the provisions of this ordinance, or any section thereof, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than $100.00 nor more than $299.00, or by imprisonment for a term not less than 30 days nor more than six months, or by both such fine and imprisonment."

From that judgment defendant appealed to the district court, where, on motion of defendants, the complaint was dismissed on the grounds that the ordinance was void. The city now prosecutes this appeal. The sole question before us is whether or not the ordinance is valid.

Appellant contends that the ordinance was enacted pursuant to the powers granted by Section 15-8-50, U. C. A. 1943, providing that:

"* * * They [the city authorities] may provide for the punishment of trespass and such other petty offenses as the board of commissioners or city council may deem proper."

Defendants advance several grounds for declaring the ordinance invalid. We consider first the contention that the ordinance is void for vagueness and uncertainty.

Disregarding Section 2 of the ordinance, which provides the punishment for the violation of "any of the provisions of this ordinance," we turn to Section 1 to look for the act which is forbidden, the doing of which supposedly constitutes a petty offense. It reads:

"The right of the people of the City of Price, County of Carbon, State of Utah, to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."

And this is all there is to the condemnatory part of the ordinance.

A comparison with the words of the Fourth Amendment of the Constitution of the United States reveals that Section 1 of this supposed prohibitory ordinance is an exact copy of part of that Amendment except that the words "people of the City of Price, County of Carbon, State of Utah" are added to the ordinance of Price. The framers of the Constitution of the United States would indeed feel complimented that the City of Price had made the same declaration as to the rights of the people to be secure in their persons, houses, papers and effects as the Constitutional fathers had made concerning all of the people of the United States, but we think they would, at least the lawyers among them, be as puzzled as we are as to what definite act or acts are denounced or prohibited.

The security of a citizen in his home from unreasonable (unlawful) searches had its roots in the concept of the English speaking peoples that every man's house is his castle

and that not even the king nor any of his minions could cross its threshold without leave or proper warrant. It was the one place a man could retire to be free and safe from intrusions of the outside world. The now famous expressions of Lord Camden in *Wilkes' Case,* 2 Wils. 151 19 State Trials 1405, show full well what the Fourth Amendment was designed to prevent. In that case, Wilkes, a member of the House of Commons, was released from close confinement in the Tower of London on a writ of habeas corpus and awarded large damages against the Secretary of State and his messengers who had arrested him without warrant and searched his house and his desk and cabinet for evidence of his participation in the printing and publication of No. 45 of the "North Briton." See May's Constitutional History of England, Ch. 11; 1 Cooley's Constitutional Limitations, 8th Ed., p. 612, footnote 1.

The remainder of the Fourth Amendment, which the City of Price did not deem necessary to complete its ordinance, reads: ■

"* * * and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This shows that originally the right recognized (but not created) by the Amendment was designed principally to protect the citizen in his home from arrest or seizure of his papers and his goods from his home. But while search and seizure were coupled together as acts prohibited when such acts were without lawful warrant, the immunity has been extended to unlawful seizure of persons not reposing in their homes and to unlawful search of such persons and seizure of goods from their persons where the arrest has been unlawful. *Potter* v. *Beal,* 1 Cir., 50 F. 860; *United States* v. *Di Re,* 332 U. S. 581, 68 S. Ct. 222.

The Fourth Amendment does not denounce all searches and seizures but only such as are unreasonable. ■

"It has been construed practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile for contraband goods where it is not practicable to serve a warrant because the vehicle can be quickly moved out of the jurisdiction in which the warrant is sought. *Carroll* v. *United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790." 1 Cooley's Constitutional Limitations, 8th Ed., footnote page 616.

The preliminary steps preceding a lawful search and seizure depend somewhat upon the practical necessities of the end sought to be accomplished. The steps necessary to discover and seize liquor unlawfully possessed or transported or to obtain information to `enforce ■ revenue laws or to seize conditional or wholly contraband goods vary with the practical demands which attend the enforcement of those respective laws, always, however, with an eye on the safeguarding of the rights of the citizen to the highest degree consistent with the social purpose and workability of the law.

The ordinance in question, being partly in the words of the Fourth Amendment applied to the people of the City of Price, simply pronounces a policy in that city which is recognized as applicable to all the people of the United States. But a recognition of a right which has been traditional in the English speaking world plus a pronouncement that the right shall not be violated is not sufficiently definitive of the acts which are supposed to be denominated as crimes. There would be considerable doubt that a law which read "The right of a person to be secure from murder shall never be violated" would sufficiently describe the act to be prohibited, even though it be conceded that the term "murder" had a definite content at common law. Usually the act denounced is described at least to the point of setting forth its elements. And then the crime is defined as the commission of such acts, and punishment for the commission is prescribed. But the ordinance here in question is more indefinite than is the supposed murder statute in the illustration above given.

In the case at hand, we are not furnished with any guides as to what are reasonable or unreasonable searches and seizures. No answer is it to say that the magistrate who hears a charge under the ordinance may consult the statutes and the decisions in the field of American law and by that exploration delineate the area of reasonable from the area of unreasonable searches and seizures. This would put an intolerable if not an impossible burden on the magistrate.

In the recent case of *Musser* v. *Utah,* 68 S. Ct. 397, 398, involving the validity of Utah's conspiracy statute, the Supreme Court of the United States, speaking through Mr. Justice Jackson, said:

"* * * This led to the inquiry as to whether the statute attempts to cover so much that it effectively covers nothing. Statutes defining crimes may fail of their purpose if they do not provide some reasonable standards of guilt. See, for example, *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045. Legislation may run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused."

In the case of chattels whose only use or purpose is gambling, we have held that seizure without a warrant issued by a magistrate is lawful. *Parry* v. *Crosby,* 100 Utah 496, 116 P. 2d 411, and see cases cited therein. The Fourth Amendment, expressly recognizing a right and declaring a policy as to inviolability thereof, proceeds to set out the preliminary steps necessary to a lawful search of a dwelling house or a structure. But the general protection given by the Fourth Amendment against unreasonable search and seizure did not prevent other and different conditions as a prerequisite of search or of seizure in respect to different laws designed to accomplish a social or governmental purpose.

In the case of this ordinance we have a naked declaration of a policy or the recognition of a right of the people of the City of Price to be secure in their persons, houses, papers and effects against unreasonable

searches and seizures without any definition of what, in the various situations, constitutes an unlawful search or seizure.

This ordinance does not reveal whether it is directed against an unreasonable seizure of a person in his house or apart from it or both; whether it is intended to prohibit an unlawful seizure of papers or effects from the body of a person in his house or club house or structure in the City of Price or from the home of a person independently of seizure of or from his person.

As before stated, the Fourth Amendment has been implemented by Federal and state legislation defining reasonable searches and seizures and the basis for the same and the manner of accomplishing such search and seizure under different laws which provide for the search and/or seizure and the conditions thereof. There has usually been sufficient in the legislation to permit delineation between what purports to be a reasonable or an unreasonable search or seizure.

The ordinance here in question is expressive only of an existing right and a declared policy. It does not set out with sufficient definiteness the act or acts prohibited or denounced.

The declared policy is not sufficiently implemented by standards from which it can be determined what is or what is not under various situations a lawful or unlawful search or seizure. Evidently the test of what is an unreasonable search or seizure is left to standards not prescribed in the ordinance of Price City but to the exploration in fields of law which prescribe such standards for the state of Utah or the other states. This leaves the tests too much in the air and dependent in each case on what the magistrate hearing the case may within the light of his very limited or plenary knowledge conclude to be reasonable or unreasonable.

The acts condemned as unreasonable searches and seizures are nowhere defined in reference to the results necessary to be accomplished. The ordinance is general and vague and entirely too indefinite and uncertain. For the reasons above stated, the ordinance is a nullity.

Having determined that the ordinance is void for vagueness and uncertainty, we need not consider the other objections to the ordinance raised by defendants. The judgment is affirmed. Costs to respondents.

McDONOUGH, C. J., and LATIMER, J., concur.

WADE, Justice (concurring in result only on grounds hereinafter stated).

The power and authority of municipalities in this state to enact ordinances is derived from the legislature. *Salt Lake City* v. *Sutter*, 61 Utah 533, 216 P. 234. Appellant contends that authority to enact such an ordinance is granted by Sec. 15-8-50, U. C. A. 1943, which reads as follows:

"They may provide for the punishment of persons disturbing the peace and the good order of the city, or any lawful assembly, by clamor or noise, by intoxication, fighting, or using obscene or profane language, by indecent or disorderly conduct, or by lewd or lascivious behavior or otherwise; and may punish for interference with any city officer in the discharge of his duty. *They may provide for the punishment of trespass and such other petty offenses* as the board of commissioners or city council may deem proper." (Italics ours.)

Appellant argues and respondents concede that an unreasonable search and seizure is a trespass. However, respondents contend that the legislature by authorizing cities to enact ordinances for the punishment of trespasses obviously did not intend to include all trespasses, such as for example, murder or other heinous offenses, but intended that term as used in Sec. 15-8-50, to include such acts of trespass against realty of another as would be considered petty or trifling in nature. They further argue that the right to be free from unreasonable search and seizure is a grave and important privilege and that a violation of such a right cannot be considered of a petty or trifling character and Price City exceeded its authority in attempting to enact the ordinance in question.

I agree with respondents' contention that the legislature in Sec. 15-8-50, did not expressly grant to cities the right to enact ordinances dealing with all "trespasses" in the broad sense of that term but that their authority is limited to the regulation of such trespasses which can be the subject of a petty offense, that is not the same as to say, however, that this statute limited the cities' authority to enact laws against trespasses to realty only. There is nothing in the statute from which such a conclusion can be drawn. Had the legislature intended to so limit their authority it would have been a simple matter to directly so state.

In my opinion the controlling question is whether a violation of Price Municipal Corporation's Ordinance No. 1050 is a petty offense.

A petty offense is one which according to existing moral standards of the times is considered minor in nature and can be tried before a justice without a jury and usually the punishment provided for these offenses are trifling in consonance with the offense. Felix Frankfurter and Thomas Cocoran in an article entitled "Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury," 39 Harvard Law Review, 917 at page 980, have this to say as to what has been characterized as a petty offense:

"* * * Both in England and in the colonies a clear and unbroken practice—despite all uncertainties and reservations—emerges for two centuries preceding the Constitution. Many offenses were customarily tried solely by magistrates. These offenses were compendiously characterized as 'petty.' But pettiness was not a rigidly fixed conception; demarcation between resort to jury trial and its dispensation was not mechanical. In subjecting certain conduct to the summary procedure of magistrates, unguarded by the popular element, there was an exercise of moral judgment dividing behavior into serious affairs and minor misdeeds. The gravity of danger to the community from the misconduct largely guided the moral judgment; the wide repetition of the act, raising practical problems of enforcement, in part influenced the moral value which the community attached to the act. The apportioned punishment was both a consequence of the minor quality of the misconduct and an index of the community's moral judgment upon it. Broadly speaking, acts were dealt with summarily

which did not offend too deeply the moral purposes of the community, which were not too close to society's danger, and were stigmatized by punishment relatively light. * * *"

See also *Katz* v. *Eldredge*, 97 N. J. L. 123, 117 A. 841, for a good discussion of this subject where in a five to six opinion the majority held that an act which provided a greater punishment for an offense then was allowed before the adoption of their constitution for offenses triable without a jury did not violate their constitutional provision that the right of trial by jury shall remain inviolate. The minority view was that the punishment meted out was determinative of whether the offense could be classed as a petty offense which before the adoption of their constitution was triable without a jury. In the instant case it is not necessary to determine whether the character of the offense or the punishment provided therefor is the test as to whether an offense is triable without a jury and therefore one which can be classed as a petty offense.

All of the cases recognize that a "petty offense" is one of such a nature that a person charged therewith may be deprived of a jury trial. As quoted above:

"Many offenses were customarily tried solely by magistrates" (that is the accused was not entitled to a jury trial.) "These offenses were compendiously characterized as 'petty.' "

Thus the words "petty offense" came to be and is now used not with the ordinary meaning that it is merely a minor offense, but that at least one of its characteristics is that the person accused thereof does not have the right of a trial by jury. Courts have taken into consideration in determining its limitations the seriousness of the nature of the offense, and the amount and quantity of punishment provided therefor. These tests have been applied not in determining what is a petty offense, all courts agree that it is one for which the accused does not have the right of a jury trial, but in determining the validity of a statute which takes away that right. Thus some courts have held that a

statute which provided that a person accused of a given offense is not entitled to a trial by jury is unconstitutional because of the gravity of its nature it could not be the subject of a petty offense regardless of how small the punishment provided therefor, while others have emphasized the amount of punishment provided as largely determinative of that question. It is immaterial which of these views is taken. In all cases a petty offense is still one where the party accused thereof is not entitled to a jury trial.

It is apparent that when the legislature in Section 15-8-50, U. C. A. 1943, granted cities the right to

"* * * provide for the punishment of trespass and such other petty offenses * * *,"

it merely granted the right to enact an ordinance for the punishment of trespass only where it constituted a petty offense. The words "such other petty offenses" clearly indicate that the legislative intention was not only to limit the other offenses mentioned in that sentence to petty offenses but also to limit the authority to punish for trespass to cases where only a petty offense was committed.

Sec. 20-5-7, U. C. A. 1943, provides that:

"All criminal actions before a city or town justice arising under the city or town ordinance shall be tried and determined by such justice without the intervention of jury, except in cases where imprisonment for a longer period than thirty days is made a part of the penalty, or where the maximum fine may exceed $50. * * *"

There is no other provision of our statute where a person accused of an offense under a city ordinance may be deprived of a jury trial, so the only petty offense the punishment for which the city may provide is one which comes within the provisions of Sec. 20-5-7, quoted above. By providing a punishment greater than that which the city may provide for petty offenses under the above section of our statute the city attempted to do that which it is not authorized to do by law. It thereby attempted to provide punishment for an offense which was not a petty one because

any person accused thereof could not be denied the right of trial by jury.

From what I have said herein, I do not wish it to be inferred that I believe that a city cannot under any circumstances enact an ordinance dealing with a trespass which is not a petty offense. A city may do so where the legislature expressly grants it such power and in such a case the punishment would not be limited to that of a petty offense. I am aware that Sec. 15-8-84, U. C. A. 1943, grants to cities the right to mete out punishment to enforce its ordinances by a fine of not to exceed $300.00 or by imprisonment not to exceed 6 months, or by both such fine and imprisonment. However, this section does not have the effect of enlarging or annuling the powers of a city conferred on it by express grant, and is merely an aid to express powers granted elsewhere by the legislature. See *Bohn* v. *Salt Lake City,* 79 Utah 121, 8 P. 2d 591, 81 A. L. R. 215, and *American Fork City* v. *Robinson,* 77 Utah 168, 292 P. 249.

PRATT, Justice.

I concur in affirming the judgment of the lower court upon the grounds advanced by each of my learned associates, Mr. Justice Wolfe and Mr. Justice Wade.