## STATE v. MUSSER et al.

No. 6816.   Decided October 20, 1950.   (223 P. 2d 193)

See 12 C. J. C., Constitutional Law, Sec. 580, Unconstitutionality of Statute as vague and uncertain, 7 A. L. R. 2d, 674. See, also, 50 Am. Jur. 484.

*Claude T. Barnes, J. H. McKnight, Knox Patterson, Ray S. McCarty, Edwin D. Hatch,* Salt Lake City, for appellants.

*Grover A. Giles,* Attorney General, with *Calvin L. Rampton* and *W. S. Wagstaff,* Assistant Attorneys General, *Brigham E. Roberts,* District Attorney, and *H. D. Lowry,* Deputy District Attorney, Salt Lake City, for respondent.

WADE, Justice.

Section 103—11—1, U. C. A. 1943, denounces as a criminal offense for two or more persons to conspire

"(5) To commit any act injurious * * * to public morals * * *"

Our problem here is to determine whether the broad sweep of that general language, in view of the whole context of that statute and our other statutory and common laws and the history and background of the enactment of that statute may be by construction limited so as to define the offense therein denounced so as

"to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused"

under that subdivision. *Musser* v. *State*, 333 U. S. 95, 68 S. Ct. 397, 398, 92 L. Ed. 562.

Appellants were convicted of an offense under the above subdivision. We sustained that conviction on the grounds that the evidence showed that they were parties to "an agreement to advocate, counsel, advise and urge the practice of polygamy and unlawful cohabitation by other persons". *State* v. *Musser*, 110 Utah 534, 175 P. 2d 724, 734. Although the appellants urged that their conviction violated the Fourteenth Amendment to the Federal Constitution, the question here presented was never specifically assigned or argued in any court until inquiries from the bench suggested it during the argument before the United States Supreme Court. That court set aside the convictions and remanded the case to us for further consideration. *Musser* v. *State, supra.*

The problem which we must decide as stated above, must be answered in the negative. The argument before this court has developed no reason why we should believe that the legislature intended, in using this language, that it should be limited to a meaning less broad than the words therein used would indicate in their ordinary sense. No language in this or any other statute of this state or other law thereof or any historical fact or surrounding circum-

stance connected with the enactment of this statute has been pointed to as indicating that the legislature intended any limitation thereon other than that expressed on the face of the words used. We are therefore unable to place a construction on these words which limits their meaning beyond their general meaning. The conviction of the defendants thereunder cannot be upheld. This part of the statute is therefore void for vagueness and uncertainty under the Fourteenth Amendment to the Federal Constitution.

In the case of *City of Price* v. *Jaynes et al.*, 113 Utah 89, 191 P. 2d 606, 607, we struck down a city ordinance on this ground. That ordinance provided that the right of the people of that city "to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated", and denounced the violation of that provision as a crime.

While the wording of this ordinance was taken directly from the Fourth Amendment to the Federal Constitution, and the terms thereof have been many times construed by the courts of this nation, still we were of the opinion that under the decision in *Musser* v. *State, supra,* that ordinance was void on account of vagueness and uncertainty. If that ordinance was void on that account and in view of the many judicial constructions which have been placed upon those words, certainly in the absence of any judicial construction of the words of this statute, which is equally vague and uncertain, we are not justified in the absence of some historical basis therefor in limiting this statute by construction.

The judgment of the lower court is therefore reversed. The convictions of the defendants are vacated and set aside.

PRATT, C. J., and WOLFE and McDONOUGH, JJ., concur.

LATIMER, Justice (concurring in the result).

I concur in the result.

The United States Supreme Court in *Musser et al* v. *State of Utah,* 333 U. S. 95, 68 S. Ct. 397, 92 L. Ed. 562, passed back to us a determination of two questions: (1) Whether Section 103—11—1, U. C. A., 1943, is so vague and indefinite that it fails adequately to define the offense or give reasonable standards for determining guilt; and (2) whether the right to raise the first question has been waived or lost because there was a failure to comply with our appellate practice and assign it as error in the first hearing. Admittedly, the first question was not raised before this court in the previous hearing, but in view of the importance of the principle involved, I believe it requires an answer.

Insofar as is material to my decision, Section 103—11—1, U. C. A., 1943, is as follows:

"If two or more persons conspire:

"(1) To commit a crime; or,

$$* \quad * \quad * \quad * \quad * \quad *$$

"(5) To commit any act injurious * * * to public morals, * * *— they are punishable by imprisonment in the county jail not exceeding one year, or by fine not exceeding $1,000."

I am of the opinion that the conviction could have been sustained under subsection (1) of Section 103—11—1, U. C. A., 1943, had it not been for the theory of the state and the instructions given by the trial court. Both polygamy and cohabitation have been made offenses by our legislature and under subsection (1) when two or more persons conspire to commit either of those crimes they have committed a separate offense.

To illustrate the theory of the trial, the judge instructed the jury as follows:

"Your attention is directed, however, to the fact that the defendants are not charged specifically with the crime of polygamy, nor specifically with the crime of polygamy, nor specifically with the crime of unlawful cohabi-

tation. They are charged with the crime of *conspiracy, conspiracy to do an act injurious to public morals * * *"*

"You are instructed that an agreement between two or more persons to *advocate, promote, encourage, teach, counsel, advise, and practice polygamous or plural marriages and to advocate, promote, encourage, urge, counsel, advise and practice the cohabitation of one male person with more than one woman, is, as a matter of law, an agreement to do an act injurious to public morals."* (Emphasis added.)

These instructions direct the attention of the jurors to the theory that the prosecution is predicated upon a conspiracy to commit acts injurious to public morals and not upon a conspiracy to commit a crime. An agreement between two or more parties to teach polygamy might be considered by a jury as a conspiracy to commit an act injurious to public morals and yet not be considered as a conspiracy to commit a crime. Marrying another while married has been made a statutory offense, but teaching that polygamy should be legalized has not.

The state, having elected to prosecute under subsection (5), cannot now rely on subsection (1) as the jury might have taken a different view under a different theory. Such being the case, we are required to determine whether the conviction can be sustained under the first mentioned subsection.

This court, in the case of *Rio Grande Lumber Co.* v. *Darke et al.*, 50 Utah 114, 167 P. 241, 242, stated:

"To challenge the constitutionality of a solemn and deliberate act of legislation by the lawmaking power of a sovereign state always presents a serious question, however trifling or insignificant may be the amount involved in the particular case."

In connection with the present action, its history, background and procedural deficiences, declaring the statute unconstitutional is a serious and delicate task and one which I would not do unless I believed the statute clearly violated the constitutional rights of the appellants. However, this court's duty is to protect these rights of citizens and if a penal statute fails adequately to define an offense

so that an ordinary individual cannot tell whether the acts he is committing are legal or illegal it must be held invalid for failing to meet the tests prescribed by the due process clause. The legislature cannot leave to judges or juries the right to prescribe the elements of an offense. Different courts and different jurors would prescribe different standards and no one would know whether he was a sinner or a saint. As stated by Mr. Justice JACKSON in *Musser et al.* v. *State of Utah*, supra:

"Legislation may run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused."

The subsection need not stand by itself as the law of this state. It could be considered in connection with other statutory enactments or decisions of this court, if there were any, which had a bearing on its interpretation. If other statutes had been enacted which set up the necessary standards, or had this court circumscribed the import of the language, or could it now fix reasonable limits from the language of the act, then the vagueness or uncertainty might be cured. However, a search has convinced me that this court has not by any decision limited the subsection, other provisions of the statutes do not afford definite standards for determining guilt and the language, when given its ordinary meaning, covers so much that it has no bounds.

I might pose the question: How all inclusive is the phrase "contrary to public morals"? It must be conceded it has wide coverage unless limited by other judicial or legislative pronouncements. It has been suggested that the phrase can be interpreted so as to indicate a legislative intent to limit its effect to those acts which are specified by the legislature in other sections of the statutes as being injurious to public morals. This argument overlooks the fact that if the acts were denounced by the Legislature they

would constitute crimes, and that subsection (1) covers those instances where parties conspire to commit a crime. I do not conceive of any act which the legislature has said is prohibited because of being injurious to public morals which has not been made a crime. The Legislature must have contemplated some acts additional to those defined as crimes when it selected the wording it used. The acts encompassed by the phraseology of subsection (5) appear to be those over and above the ones mentioned in subsection (1). Otherwise, the Legislature enacted a useless provision.

In interpreting a statute, the Legislature will be presumed to have inserted every part for a purpose and to have intended that every part be given effect. Significance and meaning should, if possible, be accorded every phrase, and a construction is favored which will render every word operative rather than one which makes some phrases or subsections nugatory. If we adopt the foregoing rule of construction we must hold that subsection (5) is a catch-all provision without guides, standards or limits.

There are situtations when conspiracies to teach certain dogmas, tenets, or beliefs might be deemed inimical to public morals by some jurists and by some jurors, and yet not be defined by the Legislature as crimes. The teaching of card-playing might be considered by some as being in that category, although the Legislature may not have made such teaching a crime. It is in this aspect that subsection (5) becomes vagrant and wandering and has no limits. Courts and juries might determine that certain teachings offend against public morals and yet the parties doing the teaching might not be advised by statute or otherwise that they were committing a crime. The standards for an offense would thus be fixed by those who heard the evidence and not by the Legislature, whose duty it is to define crime with some degree of particularity.

In the final analysis, each individual has his own moral codes, private and public, and what acts might be considered as injurious to public morals are as numerous as the opinions of man. The law requires that crimes be defined with more certainty than that.