426 P.2d 13

The STATE of Utah, Plaintiff and Respondent,

v.

Harold NIELSEN and Jane Baxter, Defendants and Appellants.

No. 10342.

Supreme Court of Utah.

March 28, 1967.

Olson & Hoggan, Logan, for appellants.

Phil L. Hansen, Atty. Gen., Salt Lake City, David R. Daines, Logan, for respondent.

ELLETT, Justice:

The defendants appeal from a conviction of "conspiring to commit an act for the obstruction of justice or the due administration of the laws, in that the defendants did conspire to obtain and procure a dismissal of the case of the State of Utah v. Vincent Guercio, by defendant, Jane Baxter, changing her statement of the facts of said case for money consideration passing from said Vincent Guercio to defendants, Harold Nielsen and Jane Baxter."

The statute under which the defendants were charged is Section 76–12–1, U.C.A. 1953, and so far as material is as follows:

If two or more persons conspire:

(1) To commit a crime, or, * * * * * * * * *

(5) To commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice or the due administration of the laws;— they are punishable by imprisonment in the county jail not exceeding one year, or by fine not exceeding $1,000.

The defendants say that subsection (5) is unconstitutional and claim that this court has heretofore so held in the case of State v. Musser, 118 Utah 537, 223 P.2d 193.

That case involved the part of the statute regarding public morals only. It was a case wherein a conspiracy to teach and practice polygamy was charged. This court upheld the statute at the first hearing (110 Utah 534), 175 P.2d 724, but the Supreme Court of the United States reversed, holding that the particular section of the statute under which the defendants were being prosecuted might be "so vague and indefinite that it fails adequately to define the offense or give reasonable standards for determining guilt." Since this particular question was not raised by the defendants

in the Musser case but was suggested by the United States Supreme Court during argument, the case was remanded to the Utah Supreme Court pursuant to the following language: "We believe we should not pass upon the question raised here until the Supreme Court of Utah has had opportunity to deal with this ultimate issue of federal law and with state law questions relevant to it. The present judgment of the Supreme Court of Utah is vacated and cause remanded for proceedings not inconsistent herewith." State v. Musser, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948).

When this court got the case back, it bowed to a superior commission if not to superior reasons and held the statute involved therein to be void for vagueness and uncertainty under the Fourteenth Amendment to the Federal Constitution.

▇ The fact that a part of a statute is held to be unconstitutional does not necessarily mean that other parts are also void. The void part may be disregarded, and the valid part enforced. See Denver v. Lynch, 92 Colo. 102, 18 P.2d 907, 86 A.L.R. 907. See also 11 Am.Jur., Constitutional Law, Section 152. The general policy is clearly expressed at 82 C.J.S. Statutes, § 93, as follows:

A statute may be unconstitutional in part and yet be sustained with the offending part omitted, if the paramount intent or chief purpose will not be destroyed thereby, or the legislative purpose not substantially affected or impaired, if the statute is still capable of fulfilling the apparent legislative intent, or if the remaining portions are sufficient to accomplish the legislative purpose deducible from the entire act, construed in the light of contemporary events.

If, when the invalid part is stricken, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, or purpose, wholly independent of that which was rejected, it must be sustained to that extent; and this rule is especially applicable where the statute provides for two distinct subjects. In other words, the invalidity of a part of a statute does not render the remainder invalid where enough remains, after discarding the valid part, to show the legislative intent and to furnish sufficient means to effectuate that intent. A statute can be saved by severability only if its entirety of thought is not destroyed.

The valid part of a statute will be sustained where the valid and invalid parts are so separate and distinct that it is clear, or may be presumed or concluded, that the legislature would have enacted the former without the latter, if it had known of the invalidity, or, as otherwise stated, if the valid or invalid parts are not so intimately connected or interdependent as to raise the presumption that the

legislature would not have enacted the one without the other, the act will be upheld so far as valid, as it will where it appears that the unconstitutional part did not constitute such an inducement to, or consideration or compensation for, the passage of the other parts that they would not have been passed without it.

The meaning of the various parts of the statute here involved will be made clearer if we set the statute out as follows:

If two or more persons conspire:

(5) To commit any act

(a) injurious to the public health,

(b) injurious to public morals,

(c) injurious to trade or commerce,

(d) for the perversion or obstruction of justice or the due administration of the laws; * * *.

It is difficult to see how there can be any interdependence between any of the provisions listed above. Each part can stand or fall without in any degree affecting the others. In the Musser case, supra, this court held part (b) above set out to be unconstitutional. It has not yet determined whether (a), (c), and (d) are valid or void.

The general rule of statutory construction is to hold an enactment of the legislature valid unless it clearly appears to violate some provision of the Constitution of this State or of the United States. See 16 C.J.S. Constitutional Law, § 99.

With this presumption in mind, let us consider the case now before us.

We are dealing only with part (d) as above set out and must decide whether it is "so vague and indefinite that it fails adequately to define the offense or give reasonable standards for determining guilt."

The obstruction of justice was a crime known to the common law. See 4 Wendell's Blackstone Commentaries, page 128. The law was well defined and consisted of a number of acts which had been held by the court to constitute the offense of interfering with the court and its officers in the due administration of the law.

The fact that the courts had decided that there were different ways of committing the crime of obstructing justice or the due administration of the laws does not make the law vague or indefinite. Burglary likewise at common law could be committed in different ways, all of which had been decided by the courts. It was committed by breaking and entering a dwelling with intent to commit a felony. It also was committed by entering an open door or a dwelling without breaking any part of the building. It was committed by breaking and entering a church or a barn or stable and so forth with intent to commit a felony when said outbuildings are inside of a common fence with the dwelling.

There was nothing thought to be vague or indefinite about burglary so long as the

indictment set out the particulars which would amount to the crime.

It will be noted that the statute involved herein does not attempt to punish for "obstructing justice" but only for "conspiring to commit an act for the perversion or obstruction of justice or the due administration of the laws."

These defendants were charged with conspiring to do an act, to-wit, changing statements of facts in a named case for money paid to them. It was alleged that said act was for the obstruction of justice or the due administration of the law. Nobody could fail to understand what the offense was, nor could anybody believe that such conduct was not, both at common law and now, an interference with the due administration of the laws. It is the conspiracy to do an evil act which has been defined for hundreds of years that constitutes this crime.

Whether there be common law crimes in Utah is immaterial. The gist of the matter is whether the defendants knew that what they conspired to do had been defined as one of the age-old things known as obstructing justice. It seems clear to us that the statute and charge made pursuant thereto are neither vague nor indefinite but that they do give reasonable standards for determining guilt firstly by the defendants when they entered into the conspiracy, and lastly by the jury when they found the defendants guilty as charged.

We hold that the part of the statute under which the defendants were charged and convicted is not unconstitutional. In this we are fortified by the holding of the California Supreme Court. In Lorenson v. Superior Court in and for Los Angeles County, 35 Cal.2d 49, 216 P.2d 859, a statute practically identical with our own was attacked as being unconstitutional. At page 865 of the Pacific Reporter it is said.

Lorenson attacks the statute making criminal conspiracy an offense upon the ground that it is so vague and uncertain as to be violative of the constitutional requirements of due process. He also contends that the indictment is equally vague and indefinite.

Section 182 defines as criminal conspiracy acts committed with the purpose " * * * to pervert or obstruct justice, or the due administration of the laws." Generally speaking, conduct which constitutes an offense against public justice, or the administration of law includes both malfeasance and nonfeasance by an officer in connection with the administration of his public duties, and also anything done by a person in hindering or obstructing an officer in the performance of his official obligations. Such an offense was recognized at common law and generally punishable as a misdemeanor. Now, quite generally, it has been made a statutory crime and, under some circumstances, a felony. Burdick, Law of

Crimes (1946), vol. 1, p. 382, et seq.; 20 Cal.Jur. 347–354.

In California, the statutes relating to "Crimes Against Public Justice" are found in Part I, Title VII, of the Penal Code. Bribery, escapes, rescues, perjury, falsifying evidence, and other acts which would have been considered offenses against the administration of justice at common law are made criminal by legislative enactment. Section 182, subdivision 5, is a more general section making punishable a conspiracy to commit any offense against public justice. The meaning of the words "to pervert or obstruct justice, or the due administration of the laws" is easily ascertained by reference either to the common law or to the more specific crimes enumerated in Part I, Title VII. * * *

Although higher standards of certainty will be required of penal than of civil statutes, Levy Leasing Co. v. Siegel, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595, a statute is sufficiently certain if it employs words of long usage or with a common law meaning, "notwithstanding an element of degree in the definition as to which estimates might differ." * * *

Considering the well-settled meaning at common law of the words "to pervert or obstruct justice, or the due administration of the laws," the other and more specific provisions in the Penal Code concerning "Crimes Against Public Justice," and the relative certainty of words employed in statutes which have been held valid, it cannot be said that subsection 5 of section 182 of the Penal Code is unconstitutional. * * *

The holding in the Lorenson case was quoted with approval in the case of People v. Sullivan, District Court of Appeals, Fourth District of California, 113 Cal.App. 2d 510, 248 P.2d 520, which was a case decided after the Musser case, supra, was before the Supreme Court of the United States.

The judgment of the District Court should be and it is hereby affirmed.

CROCKETT, C. J., and TUCKETT, J., concur.

CALLISTER, Justice: (dissenting).

The defendants rely heavily upon this court's decision in State v. Musser [1] wherein it was held that the portion of 76–12–1 (5) relating to acts injurious "to public morals" was unconstitutional because it was vague and uncertain. In that case, the defendants had been convicted under the statute for teaching and advocating the practice of polygamy. This court affirmed the conviction [2] and an appeal was taken to the United States Supreme Court. Up

1. 118 Utah 537, 223 P.2d 193 (1950).

2. State v. Musser, 110 Utah 534, 175 P.2d 724 (1946).

72

to this point, the issue as to the vagueness and uncertainty of the statute had not been raised, although the defendants had claimed that they had been denied due process under the 14th Amendment. The issue was first raised during the oral arguments before that Court and was prompted by questions from the bench. The Supreme Court set aside the convictions and remanded the case to this court for consideration of the question.[3]

Mr Justice Jackson, speaking for the majority of the Court, stated:

It is obvious that this is no narrowly drawn statute. We do not presume to give an interpretation as to what it may include. Standing by itself, it would seem to be warrant for conviction for agreement to do almost any act which a judge and jury might find at the moment contrary to his or its notions of what was good for health, morals, trade, commerce, *justice or order.* \* \* \* This led to an inquiry as to whether the statute attempts to cover so much that it effectively covers nothing. Statutes defining crimes may fail of their purpose if they do not provide some reasonable standards of guilt. (Citation omitted.) Legislation may run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused.

(Emphasis added.)

The State contends that the phrase "perversion or obstruction of justice or the due administration of the laws" is more definitive than "injurious to public morals." It points out that the former phrase had a well-defined and accepted meaning at common law, citing numerous authorities in support thereof.[4]

Utah has no crimes or offenses except those that are created by statute or ordinance.[5] Under subsection (1) of 76–12–1, our general conspiracy statute, persons may be charged with conspiring to commit a crime.[6] Therefore, subsection (5) must refer to acts not specifically "spelled out" in our criminal statutes. Mr. Justice Latimer, in his concurring opinion in the second decision of the Musser case,[7] recognized this and stated: ·

3. Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948).
4. E. g., Commonwealth v. Mochan, 177 Pa. Super. 454, 110 A.2d 788 (1955); Sykes v. Director of Public Prosecutions (1962) A.C. 528; Roberts Case, 3 Cokes Institutes 139 (1569); Regina v. Bailey (1956), N.I. 15; Perkins, Criminal Law, p. 422 (1958); Clark and Marshall, Crimes, 6th Ed. § 1401 (1946); Vol. 1, p. 382, et seq. These authorities do not deal directly with the constitutional problem herein involved.
5. Moorehouse v. Hammond, 60 Utah 593, 209 P. 883 (1922).
6. This undoubtedly refers to a statutory crime.
7. Note 1, supra.

* * * It has been suggested that the phrase can be interpreted so as to indicate a legislative intent to limit its effect to those acts which are specified by the legislature in other sections of the statutes as being injurious to public morals. This argument overlooks the fact that if the acts were denounced by the legislature they would constitute a crime, and that subsection (1) covers those instances where parties conspire to commit a crime. * * * The legislature must have contemplated some acts additional to those defined as crimes when it selected the wording it used. The acts encompassed by the phraseology of subsection (5) appear to be those over and above the ones mentioned in subsection (1). Otherwise, the legislature enacted a useless provision.

In interpreting a statute, the legislature will be presumed to have inserted every part for a purpose and to have intended that every part be given effect. Significance and meaning should, if possible, be accorded every phrase, and a construction is favored which will render every word operative rather than one which makes some phrases or subsections nugatory. If we adopt the foregoing rule of construction we must hold that subsection (5) is a catch-all provision without guides, standards or limits.

The State and the majority opinion place great reliance upon certain decisions of the courts of California [8] upholding the constitutionality of a California conspiracy statute [9] which is almost identical with 76–12–1(5), U.C.A. 1953. The Lorenson case appears to be the leading case in this respect. In that case, a police captain and others were indicted for conspiracy to commit robbery, to commit assault with a deadly weapon and to "pervert or obstruct justice or the due administration of the laws." The court held that, "In California, the statutes relating to 'Crimes Against Public Justice' are found in Part I, Title VII, of the Penal Code." [10] Hence, "(t)he meaning of the words 'to pervert or obstruct justice, or the due administration of the laws' is easily ascertained by reference either to the common law or to the more specific crimes enumerated in Part I, Title VII. A conspiracy with or among public officials not to perform their official duty to enforce criminal laws is an obstruction of justice and an indictable offense at common law."

No mention was made of Musser v. State [11] in the Lorenson case, although the

8. Lorenson v. Superior Court, 35 Cal.2d 49, 216 P.2d 859 (1950); People v. Sullivan, 113 Cal.App.2d 510, 248 P.2d 520 (1952); Calhoun v. Superior Court, 46 Cal.2d 18, 291 P.2d 474 (1955).

9. Calif.Penal Code, Sec. 182, subd. 5.
10. Utah's counterpart is found in Chapter 28 of our Penal Code (76–28–1 et seq.), U.C.A.1953.
11. Note 3, supra.

**74**

decision of the United States Supreme Court had been published about two years prior thereto.

The subsequent California cases of Sullivan and Calhoun (note 8, supra) followed Lorenson. However, in a still later case,[12] the decisions of the three foregoing cases were analyzed and the rule of Musser v. State was recognized. In this latter case, the defendant was charged with a conspiracy to pervert and obstruct justice and the due administration of the law and to cheat and defraud the State of California of property by means of violation of section 4570 [13] of the Penal Code in taking a manuscript out of San Quentin without permission of the warden and by means of such acts to sell and distribute the book.

The court held that "[t]he charge of conspiracy to obstruct justice and to cheat and defraud the state cannot be applied in its full sweep under Penal Code, Section 182, subd. 5. If we narrow down the indictment to a conspiracy under subdivision 1 or 5 of that section to violate section 4570 of the Penal Code, it will stand."

Mr. Justice Tobriner,[14] speaking for the District Court of Appeals, made the following observations:

The constitutionality of the California statute, however rests upon the fact that three cases have chartered boundaries, to its otherwise limitless sea of criminality.

\* \* \* \* \* \*

Hence, as interpreted by the California cases, section 182, subd. 5 is not limitless but contracted \* \* \*.

While only the term "public morals" was precisely involved in Musser v. State, nevertheless the language of the opinion (previously quoted) indicates that the United States Supreme Court was aware of the other provisions of subsection (5) of our statute and considered them subject to the same frailties.

Again, while this court's decision in the second case of State v. Musser was confined to the term "public morals," the language contained in the main opinion has application to the phrase "for the perversion or obstruction of justice or the due administration of laws." Mr. Justice Wade, author of that opinion, stated:

\* \* \* The argument before this court has developed no reason why we should believe that the legislature intended, in using this language, that it should be limited to a meaning less broad than the words therein used would indicate in their ordinary sense. No language in this or in any other statute of

---

12. Davis v. Superior Court, 175 Cal.App. 2d 8, 345 P.2d 513 (1959).
13. Which makes it a misdemeanor for any person, without the permission of the warden, to communicate with any prisoner or take from the prison any letter, writing, etc. from any person confined therein.
14. Presently an Associate Justice of the Supreme Court of the State of California.

this state or other law thereof *or any historical fact or surrounding circumstance connected with the enactment of this statute has been pointed to as indicating that the legislature intended any limitation thereon other than that expressed on the face of the words used.* We are therefore unable to place a construction on these words which limits their meaning upon their general meaning. * * * This part of the statute is therefore void for vagueness and uncertainty under the Fourteenth Amendment to the Federal Constitution. (Emphasis added.)

The court in the foregoing case did not see fit to limit or define "public morals" by reference *either to the common law* or specific crimes enumerated in our Penal Code. Acts against or injurious to public morals and decency were common law crimes as were acts perverting or obstructing justice or the due administering of the laws.[15]

In view of the foregoing, I am constrained to dissent and to hold that 76–12–1(5), making it a crime to conspire to commit any act "for the perversion or obstruction of justice or the due administration of the laws," like "any act injurious to public morals," is void for vagueness and uncertainty under the Fourteenth Amendment to the Federal Constitution.

HENRIOD, J., concurs in the dissenting opinion of CALLISTER, J.

HENRIOD, Justice: (concurring in the dissenting opinion of CALLISTER, J.)

I concur in the dissenting opinion of Mr. Justice Callister. In doing so I suggest that the main opinion seems to disregard our own law.

Some of the punch lines of the main opinion purporting to support it copiously refer to the common law and Blackstone, both of which or whom so far as this case is concerned, are inapropos. Our statute and case law are honorable posthumous testimonials to this. Sec. 76–1–11, U.C.A. 1953, says "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, any of the following punishments: 1) Death, 2) Imprisonment, 3) Fine, 4) Removal from office. * * *" Neither the common law nor Blackstone, so far as I know, said what the penalty was for conspiring to commit any act "for the perversion or obstruction of justice,"—the charge in this case,—and unrevealed in the main opinion. Was it death, imprisonment (and for how long), fine or removal from office, as our statute suggests,—obviously referring to other sections of the statute to determine the penalty? Did the common law or Blacksone set the penalty for conspiracy to pervert or

---

15. 1 Burdick, Law of Crimes, § 89.

obstruct justice? Was it one of our *statutory* penalties, or was it trial by ordeal, water, champion, by hanging, the thumbscrew or the rack? The simple answer is that if reference is made to the common law as to the crime it should make reference to the penalty. A simpler answer is that there aren't any common law crimes in Utah,—they are purely statutory, as Moorehouse v. Hammond [1] clearly points up. Therefore, is is disarming to consider or talk about the common law or Blackstone in this case. One wonders what would happen if a person were accused of being a witch or a sorcerer under this perversion of justice statute.

To compare the statute in this case with the burglary statute, equally is disarming. I think any elementary school student could read our burglary statute, understand it and fear its penal implications. But I defy a Rhodes scholar to know or understand the constrictions of the ectoplasmic wording of conspiring "to commit any act * * * for the perversion or obstruction of justice." Mr. Justice Jackson in the Musser case agreed with such conclusion in knocking out the phrase "to commit any act injurious to public morals," a phrase not only more euphonious, but much more understandable, in my opinion, than "perversion or obstruction of justice." Both phrases were separated only by a comma, in the same paragraph of the same statute.

I agree with the main opinion that one part of a statute may be unconstitutional, but another part constitutionally may be preserved. But the main opinion supports this conclusion by citing 82 C.J.S. Statutes § 93,—all of which is Hornbook, but not applicable here, since it premises its thesis on clarity or obscurity of the separate parts. The excerpt from the California Lorenson case does not help, since it is based on acceptance of common law crimes,—which this state does not espouse.

The main opinion forgets that where there is a vagueness or ambiguity in a criminal statute, it is elementary that such doubt is to be resolved in favor of the accused instead of in favor of constitutional reconciliation of words debatably available to the lexicographer, but not to the common citizen. [2]

The whole section, part of which was destroyed as being unconstitutional in the Musser case should receive the same fate, irrespective of the circumstance of a comma separating the verbal Siamese Twins.

---

1. 60 Utah 593, 209 P. 883.

2. Ringwood v. State, 8 Utah 2d 287, 333 P.2d 943.