Richard Arlan **ERB**, Appellant,

v.

**IOWA STATE BOARD OF PUBLIC IN-STRUCTION**, convened as the Board of Educational Examiners, **Dr. James M. Walter**, President, Appellee.

No. 55838.

Supreme Court of Iowa.

March 27, 1974.

Peter J. Peters, Council Bluffs, for appellant.

Elizabeth Nolan, Asst. Atty. Gen., for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

In this appeal plaintiff Richard Arlan Erb challenges the revocation of his teaching certificate. The certificate was revoked by defendant Board of Educational Examiners after a hearing on July 16, 1971. Erb brought an action in certiorari alleging the board's action was illegal. After trial the writ of certiorari was annulled. Erb appealed. We reverse.

Under Code § 260.1, the State Board of Public Instruction constitutes the Board of Educational Examiners. Code § 260.2 empowers the examining board to issue teaching certificates "to applicants who are eighteen years of age or over, physically competent and morally fit to teach, and who have the [required] qualifications and training * * *."

The board hearing in this case was convened pursuant to Code § 260.23 which

provides, "Any diploma or certificate issued by the board may be suspended or revoked by it for any cause which would have authorized or required a refusal to grant the same, and the holder shall have ten days' notice by registered mail and be allowed to be present and make defense." The notice of hearing informed Erb the basis alleged in support of suspension or revocation of his teaching certificate was "moral turpitude."

The evidence before the board and district court was largely undisputed.

Erb, a native Iowan, military veteran, and holder of a master's degree in fine arts, received his Iowa teaching certificate in 1963. Since then he has taught art in the Nishna Valley Community School which serves an area including the towns of Strahn, Emerson, Hastings, and Stanton. He resides in Emerson, is married and has two young sons. In addition to teaching he has coached wrestling, assisted with football, and acted as senior class sponsor.

The complaint against Erb was made by Robert M. Johnson, a farmer whose wife Margaret taught home economics in the Nishna Valley School. Johnson told the board his goal was removal of Erb from the school and not revocation of his teaching certificate. He read an extensive statement in which he detailed his observations relating to an adulterous liaison between Erb and Johnson's wife which began and ended in spring 1970.

Margaret planned to quit teaching and open a boutique in Red Oak. Her association with Erb began in early spring when he agreed to assist her with design of the store. They saw each other often. By May, Johnson became suspicious of Margaret's frequent late-night absences from home. He suspected Margaret and Erb were meeting secretly and engaging in illicit activity in the Johnson automobile. One night in May he hid in the trunk of the car. Margaret drove the car to school, worked there for some time, and later drove to a secluded area in the country where she met Erb. Margaret and Erb had sexual intercourse in the back seat of the car while Johnson remained hidden in the trunk. Johnson did not disclose his presence or his knowledge of the incident.

Instead he consulted a lawyer with a view toward divorcing Margaret. He told the board he was advised his interests in a divorce action would be better served if he had other witnesses to his wife's misconduct. After several days of fruitless effort to catch Margaret and Erb in a compromising situation, he and his "raiding party" eventually located them one night in June parked in a remote area. Johnson and the others surrounded the car and took photographs of Margaret and Erb who were partially disrobed in the back seat. Johnson told Margaret not to come home and that further communication would be through lawyers. He told Erb to disclose the affair to his wife.

Erb did so. He and Margaret terminated their affair. Erb offered to resign his teaching position, but the local school board unanimously decided not to accept his resignation. The board president testified Erb's teaching was highly rated by his principal and superintendent, he had been forgiven by his wife and the student body, and he had maintained the respect of the community. Erb was retained for the ensuing school year and continued to teach in the Nishna Valley school.

Witnesses before the board included Erb's past and present high school principals, his minister, a parent of children in the school, and a substitute teacher. All vouched for his character and fitness to teach. His superintendent gave essentially the same testimony in district court. The board refused to allow Erb's attorney to cross-examine Johnson or two witnesses offered by him and also refused to allow testimony of about 35 other witnesses in support of Erb's character and fitness to teach. Trial court ruled in its pretrial or-

der that under the admitted record Erb's teacher-student relationship had not been impaired by his conduct.

The board voted five to four to revoke Erb's teaching certificate and, without making any findings of fact or conclusions of law, ordered it revoked. Revocation was stayed by trial court and then by this court pending outcome of the certiorari action and appeal. Trial court held Erb's admitted adulterous conduct was sufficient basis for revocation of his certificate and annulled the writ.

■ Certiorari under rule 306, Rules of Civil Procedure, is available where an inferior tribunal, board or officer, exercising judicial functions, is alleged to have acted in excess of jurisdiction or illegally. Eden Township Sch. Dist. v. Carroll County Bd. of Ed., 181 N.W.2d 158, 166–167 (Iowa 1970). In this appeal Erb contends the board acted illegally (1) in denying his right to cross-examine witnesses against him and limiting the number of his witnesses, (2) in failing to make findings, and (3) in revoking his teaching certificate without substantial evidence that he is not morally fit to teach.

■ I. *Limitations at the hearing.* Erb did not object before the board to the board's denial of his right of cross-examination and limitation on the number of his witnesses. These questions cannot be presented for the first time here. Erb was obliged to raise them before the board and the trial court. See Bowen v. Story County Board of Supervisors, 209 N.W.2d 569, 572 (Iowa 1973). Since he did not do so he failed to preserve error in these respects for review here.

■ II. *Failure of the board to make findings.* A different situation exists concerning the board's failure to make findings of fact. Erb's first opportunity to complain of the absence of board findings was in his certiorari action, and he did

raise the issue there. We hold the board acted illegally in failing to make findings of fact.

■■ Although Iowa does not have an administrative procedure act to guide administrative boards, we have held such boards are required, even without statutory mandate, to make findings of fact on issues presented in any adjudicatory proceeding. Such findings must be sufficiently certain to enable a reviewing court to ascertain with reasonable certainty the factual basis and legal principle upon which the administrative body acted. Cedar Rapids Steel Transp., Inc. v. Iowa State Commerce Commission, 160 N.W.2d 825, 837 (Iowa 1968), cert. denied, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451; see Catalfo v. Firestone Tire and Rubber Co., 213 N.W. 2d 506, 509–510 (Iowa 1973).

The board violated this precept in the present case. No findings were made. This would be sufficient basis to hold trial court should have sustained the writ of certiorari. However, reversing the case on that basis would return the case to the board which could make its findings on the present record and would not answer the remaining issue whether there is substantial evidence in the record which would permit the board to find Erb is not morally fit to teach. If that issue is resolved favorably to Erb, the case will be ended now in his favor rather than sent back to the board for findings.

III. *Sufficiency of the evidence.* Since the board made no findings there is no intelligible way to determine what interpretation the board gave to its statutory authorization to revoke the certificate of one not "morally fit to teach." But nothing prevents us from determining whether there is substantial evidence in the record which would have supported revocation if the proper standard had been applied. Erb contends there is not. We agree. We will first examine the standard and then the sufficiency of the evidence.

This court has not previously been called upon to decide what constitutes moral unfitness to teach. The legislature provided no definition in code chapter 260.

No constitutional question is raised. Therefore we pass any issue relating to the statute's constitutionality. But see Konigsberg v. State Bar, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); Musser v. Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948); State v. Musser, 118 Utah 537, 223 P.2d 193 (1950) (upon remand); Burton v. Cascade School District Union High School No. 5, 353 F.Supp. 254 (D. Or.1973); see also State v. Kueny, 215 N. W.2d 215 (Iowa 1974) (filed February 20, 1974); State v. Wedelstedt, 213 N.W.2d 652 (Iowa 1973).

■ Extensive treatment of the concept of regulation of teacher conduct is provided in Board of Education v. Swan, 41 Cal.2d 546, 261 P.2d 261 (1953), where the court held a public school teacher is subject to reasonable administrative supervision and restriction so that proper discipline may be maintained and the teacher's conduct will neither disrupt nor impair the public service. A teacher occupies a sensitive position. Since students are taught by example as well as lecture, the teacher's out-of-school conduct may affect his classroom fitness. Meinhold v. Clark County School District, 506 P.2d 420 (Nev.1973). But such conduct is of limited relevance. We agree with this observation from Jarvella v. Willoughby-Eastlake City Sch. Dist., 12 Ohio Misc. 288, 291, 233 N.E.2d 143, 146 (1967):

"The private conduct of a man, who is also a teacher, is a proper concern to those who employ him only to the extent it mars him as a teacher, who is also a man. Where his professional achievement is unaffected, where the school community is placed in no jeopardy, his private acts are his own business and may not be the basis of discipline."

■ The board contends the fact Erb admitted adultery is sufficient in itself to establish his unfitness to teach. This assumes such conduct automatically and invariably makes a person unfit to teach. We are unwilling to make that assumption. It would vest the board with unfettered power to revoke the certificate of any teacher whose personal, private conduct incurred its disapproval regardless of its likely or actual effect upon his teaching. The legislature did not give the board that kind of power in Code § 260.23. The label applied to the teacher's conduct is only a lingual abstraction until given content by its likely or actual effect on his fitness to teach. Morrison v. State Board of Education, 1 Cal.3d 214, 82 Cal.Rptr. 175, 194, 461 P.2d 375, 394 (1969); see Fisher v. Snyder, 476 F.2d 375 (8 Cir. 1973); Norton v. Macy, 135 U.S.App.D.C. 214, 417 F. 2d 1161 (1969); Board of Trustees of Los Angeles Jr. Col. v. Metzger, 8 Cal.3d 206, 104 Cal.Rptr. 452, 501 P.2d 1172 (1972); 68 Am.Jur.2d Schools § 134 at 465 ("Where the courts have been presented with the question whether or not specific conduct of a teacher constitutes moral unfitness which would justify revocation, they have apparently required that the conduct must adversely affect the teacher-student relationship before revocation will be approved.").

As observed by the Morrison court, "Surely incidents of extramarital heterosexual conduct against a background of years of satisfactory teaching would not constitute 'immoral conduct' sufficient to justify revocation of a life diploma without any showing of an adverse effect on fitness to teach." 82 Cal.Rptr. at 183, 461 P. 2d at 383.

■ We emphasize the board's power to revoke teaching certificates is neither punitive nor intended to permit exercise of personal moral judgment by members of the board. Punishment is left to the criminal law, and the personal moral views of board members cannot be relevant. A

subjective standard is impermissible and contrary to obvious legislative intent. The sole purpose of the board's power under § 260.23 is to provide a means of protecting the school community from harm. Its exercise is unlawful to the extent it is exercised for any other purpose.

■ In Morrison the California court discussed factors relevant to application of the standard:

"In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." 82 Cal.Rptr. at 186, 461 P.2d at 386.

These factors have relevance in deciding whether a teacher is morally fit to teach under Code § 260.2. Since the same standard is applicable in determining whether a certificate should be revoked under Code § 260.23, a certificate can be revoked only upon a showing before the board of a reasonable likelihood that the teacher's retention in the profession will adversely affect the school community.

■ There was no evidence of such adverse effect in the present case. No one even asserted such an effect. The complainant himself acknowledged his purpose was to remove Erb from the school rather than from teaching. The evidence showed Erb to be a teacher of exceptional merit. He is dedicated, hardworking and effective. There was no evidence to show his affair with Margaret Johnson had or is likely to have an adverse effect upon his relationship with the school administration, fellow teachers, the student body, or the community. Overwhelming and uncontroverted evidence of local regard and support for Erb is a remarkable testament to the ability of a community to understand, forgive and reconcile.

There was no evidence other than that Erb's misconduct was an isolated occurrence in an otherwise unblemished past and is not likely to recur. The conduct itself was not an open or public affront to community mores; it became public only because it was discovered with considerable effort and made public by others. Cf. Pettit v. State Board of Education, 10 Cal.3d 29, 109 Cal.Rptr. 665, 513 P.2d 889 (1973). Erb made no effort to justify it; instead he sought to show he regretted it, it did not reflect his true character, and it would not be repeated.

We dealt with the meaning of the substantial evidence rule in the context of testing administrative action by certiorari in Grant v. Fritz, 201 N.W.2d 188, 195–197 (Iowa 1972). Applying that rule in the present case, we are persuaded the evidence adduced before the board would not support a finding that Erb is morally unfit to teach in Iowa.

The board acted illegally in revoking his certificate. Trial court erred in annulling the writ of certiorari.

Reversed.