## PARK v. RIVES, City Recorder.

No. 2333. Decided December 8, 1911 (119 Pac. 1034).

1. STATUTES—REPEAL—IMPLIED REPEAL. In the absence of an express repeal of a statute, to justify the presumption of an intention to repeal a statute by a later one, the two must be irreconcilable. (Page 52.)

2. ELECTIONS—BALLOTS—STATUTES—IMPLIED REPEAL. Laws 1911, c. 126, providing for the nomination at a primary election of candidates for city offices, and providing that the two candidates receiving the highest number of votes at the primary shall be placed on the general ballot at the general election, does not repeal the provision of the general election laws requiring a blank ticket to be left at the right of the ballot, and the general provisions of the Laws of 1911, that the ballot at the general munipical election shall be the same as provided by the general election laws where not inconsistent therewith render applicable the provisions of the general election laws requiring a blank ticket; and the recorder of a city in making up the official ballot must leave a blank ticket. (Page 52.)

3. CONSTITUTIONAL LAW—STATUTES—VALIDITY. A provision of a statute which has for many years been applied and given effect without challenge will not be held unconstitutional, except on a compelling belief of its invalidity. (Page 53.)

4. ELECTIONS—BALLOTS—STATUTES. The provision in Laws 1911, c. 126, that only the names of the two candidates receiving the highest number of votes at a primary election shall be placed on the ballot for the general municipal election, refers only to what names shall be placed on the ballot by the city recorder in preparing the ballots for the general election, and does not prevent a voter from voting for another person by writing his name on the ballot. (Page 53.)

5. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT. The intention of the legislature, as expressed by the language of a statute, interpreted according to its fair and obvious meaning and the context, is the controlling feature in the construction of the statute. (Page 54.)

6. CONSTITUTIONAL LAW — CONSTRUCTION IN FAVOR OF VALIDITY. Where the language of a statute is equally susceptible to two meanings, one rendering it valid and the other invalid, the court must adopt the one which renders the statute valid. (Page 55.)

MANDAMUS by Samuel C. Park against B. S. Rives, City Recorder of Salt Lake City, to compel the recorder to issue a certificate of election.

PEREMPTORY WRIT ISSUED.

*Van Cott, Allison & Riter, Mathoniah Thomas, C. S. Varian, Rawlings, Ray & Rawlings, Booth, Lee, Badger, Rich & Parke* and *Stephens, Smith & Porter* for plaintiff.

*Soren X. Christensen* and *H. J. Dininny* for defendant.

STRAUP, J.

Prior to the enactment of chapters 125 and 126, Sess. Laws 1911, approved March 20th of that year, incorporated cities of this state were governed and controlled by a mayor and a city council. The elections of such municipal officers were conducted according to the general election laws (Comp. Laws 1907, tit. 21) of the state. Under those laws, political parties are permitted to hold primary elections, or conventions of delegates, to nominate candidates for office. Such nominations may also be made by a certificate of nomination of voters signed and filed by them. It is further provided (section 839) that such nominations "shall be placed" on the official ballot under party names and emblems, or some suitable title or designation of group of petitioners, and that "the ballot shall contain no other names except that in case of electors for president and vice president of the United States, the names of the candidates for

president and vice president may be added to the party or political designation." The manner of making up the ballot and of voting is done and conducted under a method known as the Australian ballot system. In that respect it is provided that the officer designated to make up the official ballot shall cause to be printed the names of the offices to be filled immediately above the names of the candidates for the same, "and that at the right of the ballot there shall be left a blank ticket long enough to contain as many written names of candidates as there are persons to be elected, in which ticket shall be printed the names of the officers to be filled." By the Session Laws of 1911 referred to, the legislature abolished the offices of mayor and city councilmen of cities of the first and second class, to take effect the 1st day of January, 1912, created a board of commissioners for the government and control of such cities, prescribed its powers and duties, and vested the municipal government of cities of the first class in a board of five commissioners consisting of a mayor and four commissioners, and in some particulars amended the general election laws theretofore applicable to municipal elections.

It is only necessary to notice the amendments relating to the primary election, the official primary ballot, and the general election ballot. It is provided that candidates for such municipal offices shall be selected or nominated by a primary election, and that "candidates to be voted for at all general municipal elections in cities of the first and second class under the provisions of this act shall be nominated by a primary election and no other name shall be placed upon the general ballot except those selected in the manner hereinafter prescribed." (Chapter 126, section 2.) Any person desiring to become a candidate is required to file with the recorder a statement of such candidacy and a petition of at least 100 voters requesting such candidacy. At the expiration of the time for filing such statements and petitions, the recorder is required to publish in a newspaper or newspapers the names of the persons who have filed such statements and petitions, and the manner in which

40 Utah—4

they will appear upon the official primary ballot. The recorder shall make up the primary ballots and cause them to be printed; and it is provided that "upon the said ballot the names of the candidates for mayor, arranged alphabetically, shall first be placed with a square at the left of each name and immediately below the words 'Vote for One.'" A similar provision is made with respect to candidates for the office of commissioners and auditor, the only other municipal offices to be filled by election. When so made up and printed, the recorder is required to cause such primary ballots to be delivered to the judges at the various polling places for the use of the voters at the primary election. Upon a canvass by the city recorder of the returns of the cast ballots at the primary election, he shall declare and publish the result thereof. It then is provided that "the two candidates receiving the highest number of votes for mayor shall be the candidates and the only candidates whose names shall be placed upon the ballot for mayor at the next succeeding general municipal election." A similar provision also relates to the offices of commissioners and auditor. There is also a general provision which, among other things, provides that "the ballot at said general municipal election, so far as applicable," shall be the same as provided by the general election laws "not inconsistent with the provisions of this act."

The petitioner, Samuel C. Park, was a candidate for mayor of Salt Lake City, a city of the first class, at the primary election held pursuant to the Session Laws of 1911, and was one of the two candidates receiving the highest number of votes cast for that office at that election. A canvass of the returns was made, and the result declared and published. In making up the official ballot for the succeeding general municipal election to be held on the 7th day of November, 1911, the names of the two candidates for mayor so receiving the highest number of votes at the primary election were the only names printed or placed on the official ballot by the recorder for the office of mayor. That, also, was true with respect to the names of candidates for the

offices of commissioners and auditor. The recorder, however, at the right of the ballot left a blank ticket long enough to contain as many written names of candidates as there were persons to be elected, and in which were printed the names of the offices to be filled. The official ballots so made up and printed for the general municipal election were delivered to the judges of the several voting districts for the use of the voters. Upon a count of the cast ballots at the general municipal election, and a canvass of the returns, it was found and declared that Park had received the highest number of votes cast for the office of mayor. The city council, whose duty it was to canvass the returns and issue certificates of election, directed the city recorder to issue a certificate to Park, but the recorder refused to do so upon the sole ground of the invalidity of the provisions of the session laws referred to. Hence a writ of mandate is prayed for by Park to compel the recorder to issue to him the certificate.

No question relating to remedy or parties is made. Both the petitioner and the defendant seek a decision on merits involving questions only with respect of the validity of the laws referred to.

It is not contended that the provisions relating to the primary election, the manner of making nominations, or those relating to the official primary ballot are invalid. The contention made is this: That the provisions of the Session Laws that no other names, except the names of the two candidates receiving the highest number of votes cast at the primary election, "shall be placed upon the general ballot," and, "the only candidates whose names shall be placed upon the ballot for mayor at the next succeeding general municipal election," by necessary implication, repeal the provision of the general election laws, requiring a blank ticket to be left at the right of the ballot long enough to contain as many written names of candidates as there are persons to be elected; and therefore the act of the recorder in providing a blank ticket at the right of the ballot, as was here done by him, was unauthorized; that the provisions that the names

of the two candidates receiving the highest number of votes cast at the primary election shall be the only names "placed upon the general ballot" at the general municipal election, either in express terms, or by necessary implication, forbid, not only the recorder placing any other name on the official ballot, but also forbid the voter writing or pasting any other name on the ballot in making up and in casting his vote; and that a provision which so compels the voter to vote only for one of two candidates for a particular office, and which does not permit him to vote for any other person for such office, if he so desires, interferes with the freedom, rights, and privileges of the elective franchise guaranteed by the Constitution. That is, because of such provisions, it is contended that a voter in making up and in casting his ballot is restricted to a choice of only one of the two printed names on the ballot, and is prohibited from writing the name of another thereon, and voting for such other. To do so it is urged would be "placing the name" of another "candidate" on the ballot which is expressly forbidden.

Let it be conceded that, if the act so restricts and prohibits a voter, such legislation would, as is urged, be an improper interference with the elective franchise. (15 Cyc. 289.) But we are of the opinion that the proper interpretation of the act does not lead to the conclusion of such a restriction and prohibition.

In the first place, we think the provision of the general election laws requiring a blank ticket to be left at the right of the ballot was not repealed for the reasons **1, 2** that there are no express terms of a repeal of that provision, and that the presumption is against an intention to repeal where express terms are not used; and, in the absence of such terms, to justify the presumption of an intention to repeal one statute by another, the two statutes must be irreconcilable. We think the statutes here are reconcilable. The provision permitting the names only of the two candidates receiving the highest number of votes at the primary election to be placed on the general or official ballot of the general municipal election is not inconsistent,

but is entirely consistent, with the provision of the general election laws requiring a blank ticket to be left at the right of the ballot. The one refers to the names of what candidates may be placed on the general or official ballot by the officer whose duty it is to make up and cause the ballots to be printed; the other, to the leaving of a blank ticket to the right of the ballot. That the one is consistent with the other seems self-evident. A disquisition upon the subject cannot make it any more so.

Having reached this conclusion, it follows that the general provision of the Session Laws providing that "the ballot at said general municipal election shall be the same" as provided by the general election laws not inconsistent with the Session Laws renders applicable the provision in the general laws requiring a blank ticket to be left at the right of the ballot, and hence the recorder in making up the official ballot was authorized to leave, as was done by him, a blank ticket at the right of the ballot. To hold the two provisions here in question inconsistent leads to the conclusion that the provision in the general election laws providing that "the ballot shall contain no other names," except those of the persons nominated by parties, or group of petitioners, is likewise inconsistent with the provision requiring a blank ticket to be left at the right of the ballot.

A provision which for many years has been so repeatedly applied and given effect in the conduct of elections as has this without challenge ought not to be held bad, except upon a compelling belief of its invalidity.

In the next place, the provision in the Session Laws that only the names of the two candidates receiving the highest number of votes at the primary election "shall be placed upon the ballot" for the general municipal election refers to what names, and only what names, shall be placed upon the ballots by the recorder in making up and in causing the ballots for the general municipal election to be printed as he is required to do. That is manifest not only from the language employed, but also by the context. The act, after providing for the primary election, a canvass

of the returns, a declaration and a publication of the result, reads: "The two candidates receiving the highest number of votes for mayor shall be the candidates and the only candidates whose names shall be placed upon the ballot for mayor at the next succeeding general municipal election." To say that the words "the only candidates whose names shall be placed upon the ballot" mean that a voter in making up and in casting his vote is not permitted to vote for another by writing such other's name on the ballot, and that, if he does so, he is "placing the name of a candidate upon the ballot," is to give an unwarranted meaning to such words, and which cannot fairly be implied from the context. Such was the conclusion reached by the court in the case of *Eckerson v. City of Des Moines,* 137 Iowa, 452, 115 N. W. 177, where, on a similar statute, this question was considered.

The intention of the legislature, of course, is the controlling and determining feature. That intention is expressed by, and is found in, the language actually used, interpreted according to its fair and obvious meaning, and according to the context and the approved usage of the language. So construing these words, it is clear that they do not themselves prohibit a substitution of names by the voter by writing upon the ballot. If that were intended, such an intention could have been expressed in language which readily would convey that meaning. From the language here employed considered in connection with the context, it is very clear that it refers to the making up of the ballot by the recorder, and not to some prohibition or restriction upon the voter. To construe it otherwise, and to hold it a restriction or a prohibition upon the voter, is to hold that the provision in the general statute that "the ballots shall contain no other names," except those of nominations of political parties or groups of petitioners, is likewise a restriction or prohibition upon the voter, and that the requirement that "all nominations" as there provided for "shall be placed" on the ballot under party names and emblems or some suitable title of groups of petitioners also

refers to a restriction upon the voter which forbids him writing the name of another upon the ballot and voting for such other, and that, if he does so, he too, is making a "nomination," and "placing" a name on the ballot forbidden by that statute. That those provisions and that language refer, not to a restriction or a prohibition upon the voter, but to the officer designated to make up and cause to be printed the general ballots to be distributed by him to the judges of the several polling places for the use of the voters, has never been questioned, though our statute has contained them for many years, and though they have so been considered and repeatedly applied in the conduct of elections held thereunder.

We may, however, observe here, as was said by the court in the case of *Eckerson v. City of Des Moines, supra,* that even though it is possible to infer from the language used that the legislature in fact intended to prohibit or restrict the voter, as contended, yet there are reasonable grounds for holding that the language was not intended for that purpose, but was intended only to designate what names shall be placed on the official ballot by the recorder, "and on very familiar principles we will not ascribe to the words used by the lawmaking body a meaning which does not in common understanding follow of necessity, for the purpose of holding the act in which they occur obnoxious to the Constitution." And, even though it should be said that the language was equally susceptible to two meanings, one consistent and the other inconsistent with the Constitution, every rule of statutory construction requires us to give it the meaning which renders the statute in harmony with the Constitution.

We are of the opinion that the petitioner is entitled to the writ. The order therefore is that a peremptory writ issue in accordance with the prayer of the petition, costs to the petitioner.

FRICK, C. J., and McCARTY, J., concur.