424 P.2d 442

**SALT LAKE CITY, a Municipal Corporation of the State of Utah, Appellant and Plaintiff,**

v.

**TOWNE HOUSE ATHLETIC CLUB and the University Club, Respondents and Defendants.**

**No. 10640.**

Supreme Court of Utah.

Feb. 27, 1967.

Homer Holmgren, City Atty., Salt Lake City, A. M. Marsden, Asst. City Atty., for appellant.

George Romney, Salt Lake City, for respondents.

SORENSEN, District Judge:

Plaintiff city appeals, and defendant clubs cross-appeal from a summary judgment entered upon the pleadings and a stipulation of facts, whereby the trial court construed powers granted by the Legislature to municipal corporations to regulate private non-profit social clubs. We agree with the conclusion of the trial court.

The clubs are non-profit social clubs incorporated under the provisions of Chapter 6, Title 16, U.C.A. '53, and, because liquor is stored and consumed on their respective premises, are subject to regulation by the Secretary of State, under the provisions of Sections 13 to 13.3, inclusive, of that Chapter. The clubs engage in selling food and beverages to their respective members and their guests only, and at their respective places of operations only.

The city, by ordinance, Section 20–2–62, Revised Ordinances of Salt Lake City, Utah, 1955, imposes a license fee upon restaurants. The ordinance defines that term to include activities of the club. The Legislature, in the pertinent statutes, does not define "restaurant."

The stipulation recites that the city claims the right to adopt the ordinance from Section 10–8–39, U.C.A. '53, giving cities power to license and regulate certain activities within its jurisdiction, including "restaurants," Section 10–8–80, U.C.A. '53, giving cities the revenue raising power by licensing businesses, and Section 10–8–81, U.C.A. '53, giving cities the power to license and regulate "social clubs, recreational associations, athletic associations" and the like. By their briefs and oral argument the parties considered the power asserted by the city to be regulatory rather than revenue producing, and we so consider it. No question is raised that the city may regulate "restaurants," or that the particular license fee is not reasonable.

This action was brought by the city to collect the license fee incidental to its asserted power to regulate restaurants. The record is devoid of any indication what regulation is intended.

The trial court found that the Legislature, by enacting Sections 16–6–13 to 13.3, inclusive, U.C.A. '53, (Chapter 25, L.U. '55) which provides for regulation by the Secre-tary of State of clubs on whose premises liquor is stored and consumed, and by enacting Section 11–10–1, U.C.A. '53, (Chapter 24, L.U. '59) popularly known as the "Set-up Law", did not preempt to the State regulation of clubs in the class of defendants, except, perhaps, in the area of licensing such establishments to permit the storing and consumption of liquor thereat.

It further found that the city has specific and properly delegated power to regulate and license clubs in the class of defendants by reason of Section 10–8–81, U.C.A. '53, but that no pertinent ordinance has been adopted thereunder, and that it did not have power to regulate and license such clubs or particular activities engaged in by such clubs under Section 10–8–39, U.C.A. '53, (the general delegation to cities of regulatory power) or Section 10–8–80, U.C.A. '53 (the delegation of power to raise revenue by license or tax). It therefore ordered the complaint dismissed.

The city appeals from the order of dismissal, and the clubs cross-appeal from that portion of the judgment holding that the Legislature had not preempted to the State all regulatory power over clubs in the class of defendants. We consider first the argument of the clubs that the regulation of their activities is preempted to the State.

Sections 16–6–13 to 13.3 U.C.A. '53, enacted in 1955, establishes a procedure for regulating social clubs. By its terms this set of statutes is aimed at assuring that

the clubs are organized in good faith as non-profit associations, that gambling is not allowed, and if liquor is stored or consumed thereat, that the Liquor Control Act is not violated.

Section 11–10–1, U.C.A. '53, enacted in 1959, delegates to cities the power to regulate "all establishments, associations and corporations," except those covered by Section 16–6–13 to 13.3, U.C.A. '53, who "operate a club, business or association which allows the customers, members or guests to possess or consume liquor on the premises, provided the license does not permit the licensee, operator or employee of either to hold, store, or possess liquor on the premises."

The trial court held that, although these statutes *might* be construed as a preemption to the State, as far as non-profit corporations are concerned, in the area of regulating the licensing of establishments to permit storing, possession and consumption of liquor, they do not preclude delegation to cities of the power to regulate such corporations or clubs in their conduct of other activities. We agree.

■ We do not mean to imply that the Legislature, by later enactment, may not effect a repeal of a prior act by implication. However, an implied repeal can be found only when the earlier and the later statutes cannot, by any reasonable interpretation, be reconciled so as to be enforceable as a harmonious whole.[1]

■ The statutes cited above and relied upon by the clubs do not, except perhaps as regards the activities of storing and consuming liquor, remove from municipal corporations the power to license and regulate activities of non-profit social clubs, to the extent such power may have been delegated to them by other, though earlier, statutes. We do not here hold that, as regards the activity of storage and consumption of liquor, the regulatory power is in fact preempted to the State. That issue is not before us in this case.

The pertinent ordinance purports to license one activity of the clubs, namely the preparation, serving, and selling of food and drink to club members and their guests only. The question remains whether the city derives from other statutes the authority so to do. The stipulation mentions Sections 10–8–39, 10–8–80, and 10–8–81, U.C.A. '53. Section 10–8–80, U.C.A. '53, the general grant of authority to municipal corporations to raise revenue from businesses, is mentioned neither in the briefs nor oral argument, and we deem the city to have abandoned this claim.

If the city has authority to impose the license fee sought to be collected, it derives its authority so to do from Section 10–8–39 U.C.A. '53, giving municipal corporations

1. Park v. Rives, 40 Utah 47, 119 P. 1034.

power to "license, tax and regulate * * * boarding houses, restaurants" and "eating houses * * *", or it derives such authority from Section 10–8–81, U.C.A., '53, providing that "they (cities and towns) may regulate all social clubs, recreational associations, athletic associations and kindred associations, whether incorporated or not, which maintain club rooms or regular meeting rooms within the corporate limits of the city." As far as material here, the former statute has been unchanged since 1907,[2] the latter, since 1925.[3]

The trial court ruled that the clubs, in preparing and serving food and drink to its members and guests, was not operating a "restaurant," because they were not open to the public, and hence Section 10–8–39, U.C.A. '53, was not applicable. Case law on the definition of a restaurant as turning on whether the particular establishment is or is not open to the public is of no help.[4] In view of our interpretation of the legislative intent as shown by the two statutes, we need not here decide this question.

■ Although legislative interpretation of statutes is not necessarily binding upon the court, it is entitled to weight. The enactment of subsequent legislation containing a specific grant of power kindred to that contained in prior legislation containing a general grant of power usually suggests the conclusion that the later specific grant was not included within the former general grant.[5]

■ Section 10–8–39, U.C.A. '53, is a general grant of the licensing and regulatory power over named activities. By enacting Section 10–8–81, U.C.A. '53, granting power to license and regulate social clubs, the Legislature indicated it did not construe the former act as containing such grant. We adopt that construction under the authority as presently granted by Section 10–8–81, U.C.A. '53, the city may license and regulate non-profit social clubs but it may do so only once. Under existing statutes it may not fragment this delegated power, requiring a license for each of any number of activities such club may choose to pursue, under the guise of a general grant contained in Section 10–8–39, U.C.A. '53.[6]

2. C.L. '07, Sec. 206, Subd. 38.
3. L.U. '25, ch. 113, Sec. 1.
4. Cases hold either way. See in Re Bowers, (D.C.Cal.) 33 F.Supp. 965 holding one serving meals not to general public but to clubs and employee organizations only, operated a restaurant under the Bulk Sales Act, and Godwin v. Dep't of Labor and Industries, 50 Wash.2d 209, 310 P. 2d 239, holding a student dining hall not to be a restaurant within the meaning of

the workmen's Compensation Act. See also Anno. 122 A.L.R. 1399 and 37A Words and Phrases "Restaurant," p. 59.
5. State ex rel. Barrett v. First National Bank, 297 Mo. 397, 249 S.W. 619, 30 A.L.R. 918.

6. Were defendants operating as a business for profit the rule might differ. See 33 Am.Jur. 371, "Licenses," Sec. 51, wherein it is stated: "As a general rule, a per-

Affirmed, each party to bear its costs.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

ELLETT, J., being disqualified did not participate therein.

son engaged in several distinct occupations or businesses in the same licensing territory may be required to pay a license tax for each."