445 P.2d 691

STATE of Utah, By and Through its Attorney General, Phil L. HANSEN,
Plaintiff and Appellant,

v.

SALT LAKE CITY, Utah, etc., et al.,
Defendants and Respondents.

The VAGABOND CLUB et al., Plaintiffs
and Respondents,

v.

SALT LAKE CITY, Utah, a municipal corporation, et al., Defendants
and Appellant.

Nos. 11047, 11174.

Supreme Court of Utah.

Sept. 24, 1968.

Phil L. Hansen, Atty. Gen., C. Van Drunen, Asst. Atty. Gen., Robert Stansfield, Salt Lake City, for the State by and through Hansen.

Homer Holmgren, City Atty., Paul G. Grant, Asst. City Atty., Salt Lake City, for Salt Lake City and others.

Ollie McCulloch, Richard J. Leedy, Robert D. Moore, Salt Lake City, for the Vagabond Club and others.

CALLISTER, Justice:

This action involves a challenge to the constitutionality of a comprehensive ordinance of Salt Lake City to license nonprofit clubs. There were two cases which were consolidated for this appeal. In one, the Attorney General sought a declaratory judgment determining that Section 29 of Title 20 of the Revised Ordinances of Salt Lake City, was unconstitutional. In the other, seven private clubs sought to enjoin the enforcement of the ordinance as it affects them individually. The lower court upheld the validity of the ordinance except for the provisions requiring that the police chief be given a key to the premises of the club and authorizing police officers to enter the premises without a search warrant. Both the city and the plaintiffs appeal.

There are several aspects which must be considered in evaluating the constitutionality of Section 29, Title 20 of the Revised Ordinances of Salt Lake City, Utah.

Section 10–8–81, U.C.A.1953, authorizes the city to "regulate all social clubs, recreational associations, athletic associations and kindred associations, whether incorporated or not, which maintain club rooms or regular meeting rooms within the corporate limits of the city."

Section 11–10–1, U.C.A.1953, as amended 1967, authorizes cities to license all establishments, associations and corporations, which allow the customers, members or guests to possess or consume liquor on the premises.

This court has previously held that a city under the authority of Section 10–8–81, U.C.A.1953, may license and regulate nonprofit social clubs.[1] The issue of this case is to define the limits of the exercise of the city's power to license nonprofit clubs or associations incorporated under Chapter 6, Title 16, U.C.A.1953. Insofar as the ordinance regulates clubs or associations not incorporated under Title 16, Chapter 6, U.C.A.1953, this opinion is not applicable.

In order to appreciate the dimensions of the issues before this court, it is necessary to examine Sections 16–6–13 through 16–6–15, U.C.A.1953, since the city has in effect reenacted these statutes with the substitution of the word "charter" with "license," "Secretary of State" with "Board of Commissioners," and the deletion of the $5000 bond required by Section 16–6–13.1, U.C.A.1953.

Section 16–6–13, U.C.A.1953, provides that the Secretary of State shall require proof from any association incorporating under Chapter 6, (1) that it is a bona fide club or association, the object of which is

---

1. Salt Lake City v. Town House Athletic Club, 18 Utah 2d 417, 424 P.2d 442 (1967).

not for pecuniary profit; (2) that it is organized with actual participating members, a record of which will be continually maintained and available to the Secretary of State; (3) that it will not be used for permitting gambling or any other violation of law or ordinance. The statute further provides for the Secretary of State to hold a hearing, after notice, to determine whether an association incorporated or operating under the chapter is organized or operating in accordance with law. If it be shown after a hearing that the association (1) was actually organized for pecuniary profit, (2) was used for gambling or other purposes in violation of any law or ordinance, but not limited to violations of the Liquor Control Act, (3) has failed to maintain or make available to the Secretary of State a record of its membership, (4) failed to file a bond and/or keep on record with the Secretary of State a copy of its constitution, bylaws, and house rules in conformity with the requirements of Chapter 6, or has failed to conform or abide therewith, the Secretary of State shall revoke the charter of such corporation.

Section 16–6–13.1, U.C.A.1953, provides that the constitution, bylaws, and/or house rules provide fourteen enumerated provisions, if the association maintains premises upon which liquor will be stored or consumed. These fourteen requirements were incorporated verbatim into Section 20–29–9 of the city ordinance.

Section 20–29–23, city ordinance provides that the license may be suspended or revoked by the Board of Commissioners for the violation of any provision of the ordinance or any other applicable ordinance or law relating to alcholic beverages.

The city ordinance in effect establishes the same requirements for a license as the state does for a charter, and the provisions for revocation of the license are substantially similar with the state's for revocation of the charter.

Is this particular regulatory scheme adopted by the city in exercise of its power to regulate and license non-profit clubs or associations constitutional?

Article XI, Section 5 of the Utah Constitution provides that each city is granted "the authority to exercise all powers relating to municipal affairs, and to adopt and enforce within its limits, local police, sanitary and similar regulations *not in conflict with the general law,* * * *." (Emphasis added.)

The question raised in the instant action is whether the city ordinance is in conflict with the general law and is therefore unconstitutional.

The Constitution of the State of California, which contains a similar provision to Section 5, Article XI of the Utah Con-

stitution, provides that a city "may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws." (Section 11, Article XI.) This constitutional provision has been interpreted as not only a delegation of power by the people to the local body but is also a limitation upon the local body.[2]

In the Abbott case,[3] the court delineated generally those areas where an ordinance is in conflict with the general law and explained that the denial of power to a local body when the state has occupied the field is not based solely upon the superior authority of the state. The court stated:

> * * * It is a rule of necessity, based upon the need to prevent dual regulations which could result in uncertainty and confusion. Thus, the term "conflict" as used in section 11 of Article XI has been held not to be limited to a mere conflict in language, but applies equally to a conflict of jurisdiction. In Pipoly v. Benson, (20 Cal.2d 366, 125 P.2d 482, 147 A.L.R. 515), supra, this court said, 20 Cal.2d at pages 370–371, 125 P.2d at page 485: "Paradoxical as it may seem, it is apparent that an ordinance and a statute may be identical * * * and yet the ordinance is in-

valid because within the constitutional provision it is in conflict with the statute. * * * The invalidity arises, not from a conflict of language, but from the inevitable conflict of jurisdiction which would result from dual regulations covering the same ground. Only by such a broad definition of 'conflict' is it possible to confine local legislation to its proper field of supplementary regulation." * * *

The court observed that whether the state has excluded local legislation in a given field depends not only upon the language of the statutes adopted, but upon the purpose and scope of the legislative scheme.

There is a strong similarity in principle between the instant action and Agnew v. City of Los Angeles,[4] in which the validity of a city ordinance licensing electrical contractors was involved. The issue was whether the ordinance was in conflict with the state Business and Professions Code. The court held that where the state requires certain steps to be taken to procure a license to engage in a particular business and those steps are taken, and the license issued, the right of the licensee is affirmatively granted by the state and the implication that no further require-

2. Abbott v. City of Los Angeles, 53 Cal. 2d 677, 3 Cal.Rptr. 158, 349 P.2d 974, 979, 82 A.L.R.2d 385 (1960).

3. Footnote 2, supra.
4. 51 Cal.2d 1, 330 P.2d 385 (1958).

ments should be imposed upon him may be naturally drawn.

■ There is a relevant distinction which should be observed: where the legislature imposes the requirement of doing some affirmative action, such as obtaining a license or a charter, upon a citizen, it may be implied that the legislature intended that the cities and counties shall not require him to do more. In contrast, where the legislature prohibits the citizens from doing some act, there is no basis to imply that the legislature intended that cities and counties should not add additional prohibitions. This concept is in accordance with Salt Lake City v. Kusse,[5] where this court in commenting on various tests to determine whether there is a conflict between the statute and the ordinance, quoted with approval the following:

"* * * The city does not attempt to authorize by this ordinance what the Legislature has forbidden; *nor does it forbid what the Legislature has expressly licensed, authorized, or required.* * *" (Emphasis added.)

■ Thus the lines of conflict on the instant action emerge, since the ordinance, as enacted by the city, is an encroachment upon the state's exclusive right to determine the qualifications of those entities who shall be entitled to operate as state-chartered non-profit clubs or associations. There is a conflict of jurisdiction because the effect of the ordinance could result in the city's forbidding what the legislature has expressly licensed, authorized, or required.

To illustrate the matter, the Board of Commissioners might find that a club was operating for a profit and revoke its license. The Secretary of State might determine on the same factual basis that the club was a non-profit organization. The net result is an attempt on the part of the city to prohibit that which the legislature has expressly licensed, authorized or required.

From the foregoing, one must logically conclude that insofar as the ordinance incorporates the language and requirements of Sections 16–6–13 through 16–6–15, U.C.A.1953, and encroaches upon the jurisdiction of the Secretary of State, it is unconstitutional on the ground that it creates a conflict with the general laws of the State of Utah.

■ This conclusion in no way demeans the power to regulate these state-chartered entities granted to the city in Section 10–8–81, U.C.A.1953, for this court has previously held that this statute is merely in aid of the express powers elsewhere granted.[6] The city is entitled to levy a license tax,

---

5. 97 Utah 113, 119, 93 P.2d 671 (1939).

6. American Fork City v. Robinson, 77 Utah 168, 171, 292 P. 249 (1930).

since the grant of a state charter does not exempt an entity from muncipal taxation. The city further has the power to enact ordinances under its expressly granted powers concerning sanitary, fire and other police regulations, which will in effect regulate in a nondiscriminatory manner the quality and character of the operations of these chartered associations; but the city has no power to determine the qualifications of those entities, when the state has previously reviewed them and granted a charter and retains thereto jurisdiction to revoke. In the instant action, the challenged city ordinance tends to nullify the permission granted by the issuance of a state charter under the general law, for it attempts to provide a means whereby an association with a state charter may be denied the right to organize and function by a municipality.

 The plaintiffs further challenge the constitutionality of Sections 20–29–7, 20–29–20 and 20–29–14 of the city ordinance.

Section 20–29–20 authorizes any peace officer to enter the premises and facilities of non-profit associations for the purpose of determining whether any laws or ordinances are being violated therein, and for those entities where beer or liquor is consumed or stored the police department is commanded to make periodic inspections and report its findings to the Board of Commissioners. This ordinance incorporates the authorization granted by Section 16–6–14, U.C.A.1953, which provides that all peace officers shall have the right to enter the club rooms of the associations incorporated under Chapter 6, Title 16, for the purpose of determining whether any laws or ordinances are being violated therein.

Section 20–29–7 of the ordinance provides that if the association allows the consumption of beer or liquor on the premises and the entrance to the premises is by key or other device, such a key or device must be supplied to the chief of police.

Section 20–29–14 of the ordinance empowers all peace officers to confiscate without a warrant any liquor stored on the premises that is not properly labeled as to ownership or stored in a member's locker and to which no one claims title.

This area of the law involving inspections of private premises for the purpose of discovering violations of municipal ordinances enacted under the police power has recently been reviewed by the United States Supreme Court in Camara v. Municipal Court,[7] and See v. Seattle.[8]

7. 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

8. 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

In the Camara case[9] the court observed that the question was not whether an inspection may be made, but whether it may be made without a warrant. The court held that searches of this kind "are significant intrusions upon the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, and that the reasons put forth in Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 and in other cases for upholding these warrantless searches are insufficient to justify so substantial a weakening of the Fourth Amendment's protections."

In See v. Seattle,[10] the court held that the basic component of a reasonable search under the Fourth Amendment—that it is not to be enforced without suitable warrant procedure—is applicable to business as well as residential premises. Therefore, an entry upon commercial premises not open to the public may only be compelled within the framework of a warrant procedure.

In the instant action, the provisions of the ordinance which compel the clubs to provide a key to the police, permit inspections for violations of the law and waive the necessity of a warrant, proscribe the safeguards of the Fourth and Fourteenth Amendments of the Constitution of the United States and are therefore unconstitutional.

Finally we are confronted with the issue of the effect of the severability clause contained in Section 20–29–25 of the ordinance. This court has previously held that even where a savings clause existed, where the provisions of the statute are interrelated, it is not within the scope of this court's function to select the valid portions of the act and conjecture that they should stand independently of the portions which are invalid.[11]

In the instant action, the paramount intent of the city, as indicated by the language of the ordinance, was to determine the qualifications of those entities incorporated under state law as non-profit associations. The various provisions of the ordinance are interrelated to accomplish this purpose.[12] Since it is properly the function of the city to regulate these entities within the express powers granted to municipalities by statute, we will not conjecture as to the intent of the city as to the remaining valid portions of the ordinance.

9. Footnote 7, supra.
10. See footnote 8, supra.
11. Carter v. Beaver County Service Area No. One, 16 Utah 2d 280, 283, 399 P.2d 440 (1965); Pride Oil Co. v. Salt Lake County, 13 Utah 2d 183, 187, 370 P.2d 355 (1962).
12. See State v. Nielsen, 19 Utah 2d 66, 68, 426 P.2d 13 (1967).

Consequently, all of Section 29, Title 20 of the city ordinance is hereby held invalid.

TUCKETT, J., concurs.

HENRIOD, Justice (concurring).

I concur for the reason that the heart of the ordinance required the operators of a corporation to furnish keys to police officers to enter the corporation's premises at any time,—which in my opinion is unconstitutional. This sort of sanction simply substitutes a metal key for the traditional and historical requirement that a magistrate shall issue a search and seizure warrant only upon probable cause, describing the place to be searched and the reason therefor,—with a statement under oath by him who seeks its issuance, subject to the penalties of perjury. The key to a Yale lock is no evidence of perjury and cannot satisfy the safeguards built into the Fourth Amendment to prevent unreasonable searches and seizures. To give a policeman a key to enter any nonprofit club that may possess or have liquor on the premises would open the doors perhaps to many ladies' or gentlemen's social clubs, probably the Chamber of Commerce, or any number of other clubs, including ladies' bridge clubs.

It must be remembered that the possession and consumption of liquor in Utah are perfectly legal although there is some doubt as to who gets drunk and where. Demon Rum has no such conscience. It is true and wholesome that laws give peace officers the authority to control its traffic and its imbibation, but somewhat risible to picture a man on the beat having a key ring on his belt alongside a pair of handcuffs and a six-shooter, which ring is designed only to enter private property, at will, and in accordance with his feelings or suspicions, to take a look-see around. Such a liberty guaranteed to a police officer, destroys another guaranteed liberty,—that of occupying and using one's property without the suspicion cast upon him as being a law-breaker by being forced to surrender a key to the premises to the Chief of Police or the Chief of Anything else.

I am quite unimpressed with the language of the dissent to the effect that the police officers use the key simply to browse, not to search,—only to see what anyone else might see. Practically every search that ever is made is by someone with a 20–20 vision or some other eye-rated, normal-visioned human,—not by a blind person. A search pretty much has affinity with eyeballs. If this ordinance is any good, the next step could be to pass one requiring a key from the owner of every home where such owner allows his guests to consume liquor.

The presumption is that "social clubs, recreational associations, athletic and kindred associations" operate within the law. Giving a key to the premises to policemen

not only destroys that presumption, but immediately raises a presumption that such associations may be operating unlawfully.

For the reasons above I think the ordinance should be held unconstitutional, the key to which conclusion being the key hanging on the belt of a policeman.

In answer to Mr. Chief Justice Crockett's four points in his dissent, the following observations may be made:

As to 1): That the State has not pre-empted the field in this case: There is nothing in the main opinion suggesting that the State has pre-empted the field. The two dissents, in substance and effect, seem to say that the *city* has pre-empted the field. The main opinion says only that where the State has exclusive power to determine the basic requirements for incorporation, the city, by ordinance, cannot muscle into that area by determining such requisites in defiant contravention thereto. The Chief Justice implied that the State, issuing the franchise, is helpless thereafter to control or supervise it and its officers, if a city, by ordinance, deigns otherwise. This appears to me to lack something with respect to the question of where the fountain of legislative authority has its situs.

As to 2): That the ordinance is not unreasonable: Is simply an opinion and an ipse dixit, for which the Chief Justice cites no authority, except himself.

As to 3): That the main opinion *saying* the ordinance is unconstitutional is an unwarranted intrusion into the legislative branch: This is another gratuity, since the very function of the judiciary is to interpret the laws enacted by the legislature and thus intrude into that area,—a principle that in other cases the Chief Justice many times has espoused.

As to 4): That so far as we know, says the Chief Justice, there has been no unreasonable search and no reason to fear there will be: If this means that the police have not used the keys to date, that is understandable, since this case to date has not been decided. If it means that to date there has been no case going beyond the browsing or look-see stage, that also is understandable, but the impact of the Chief Justice's predilection overlooks the fact that if the officer legally is on the premises by virtue of the key (assuming that the ordinance is valid,—which of course the Chief Justice not only assumes, but says is the fact), his statement ignores the authorities holding that if an officer is on the premises lawfully for *one* purpose, he not only can, but has a duty to make an arrest, if in his browsing around, he sees an offense presently being, or having been committed.

CROCKETT, Chief Justice (dissenting).

I dissent, believing: (1) that the State has not so pre-empted this field as to pre-

clude regulation by the city; (2) that in relation to the licensing of clubs for the purpose indicated, the regulation permitting entry therein by police is not so unreasonable that the court should strike it down as unconstitutional; (3) that to do so is an unwarranted intrusion of the judicial into the legislative prerogative; (4) that this is particularly so in the abstract of a declaratory judgment where, so far as we can know, no unreasonable search has occurred, or is threatened, and there is not even any reasonable justification for fearing that one will occur.

ELLETT, Justice (dissenting).

I dissent.

These two cases were consolidated for this appeal. In one of them the Attorney General of Utah sought a declaratory judgment that Sections 20–29–1 through 20–29–25, Revised Ordinances of Salt Lake City, Utah, 1965 are unconstitutional. In the other, seven private clubs sought to enjoin the enforcement of the ordinance against them individually. The lower court ruled that the ordinance was valid except as hereinafter indicated, and the cases are here on appeal by the Attorney General and by the private clubs.

A question has been raised as to whether the Attorney General has standing to question the constitutionality of a city ordinance since his office has no proper interest therein. However, we need not concern ourselves with the question since it is properly raised in the suit brought by the private clubs.

The trial judge in the case brought by the private clubs declared invalid that part of the ordinance which provided that any peace officer might enter the club rooms, meeting rooms, and so forth, for the purpose of determining whether any laws or ordinances were being violated, and Salt Lake City has cross-appealed from that ruling. The ordinance has a saving clause in it, and so the court held the remaining portions to be valid.

In 1959 our legislature enacted Section 1 of Chapter 24, Laws of Utah 1959, which was codified as Section 11–10–1, U.C.A. 1953. In 1967 the legislature amended Section 11–10–1, U.C.A.1953, by eliminating therefrom certain language. The original section is set forth below with the part eliminated by the amendment of 1967 italicized:

Cities and towns within the corporate limits, and counties outside of corporate cities and towns shall license all establishments, associations and corporations, *except non-profit corporations bonded and regulated under provisions of sections 16–6–13.1, 16–6–13.2 and 16–6–13.3, Utah Code Annotated 1953 as enacted by Chapter 25, sections 2, 3, and 4, Laws of Utah 1955* that operate a club, business or association which allows the customers, members or guests to possess

or consume liquor on the premises, provided the license does not permit the licensee, operator or employee of either to hold, store, or possess liquor on the premises. However, nothing in this section shall be construed to prevent persons other than the licensee, operator or employees of either, from possessing and consuming, but not storing, liquor on premises, except as otherwise provided for by statute.

Sections 16–6–13.1, 16–6–13.2, and 16–6–13.3 referred to above dealt with so-called locker clubs where liquor is stored or consumed on the premises, and those sections require each club to furnish a bond to the effect that it will faithfully comply with the laws of Utah. The Secretary of State is given authority to revoke the charter and forfeit the bond in case of violation of law.

Salt Lake City relies upon additional sections of our code as giving authority for enacting the ordinance in question. They are set out below:

10–8–42. They [cities] may prohibit, except as provided by law, any person from knowingly having in his possession any intoxicating liquor, and the manufacture, sale, keeping or storing for sale, offering or exposing for sale, importing, carrying, transporting, advertising, distributing, giving away, exchanging, dispensing or serving of intoxicating liquors.

10–8–81. They [cities] may regulate all social clubs, recreational associations, athletic associations and kindred associations, whether incorporated or not, which maintain club rooms or regular meeting rooms within the corporate limits of the city.

The Attorney General, arguing the position of the locker clubs, claims that the legislature preempted the field for the State insofar as locker clubs are concerned and that the cities have no power to do any regulating of such clubs. He seems to think that with 29 counties and 202 cities and towns all regulating such clubs, there would be such confusion resulting that a tippler who drinks all over the State would get ulcers not from the alcoholic content of the beverages consumed but from trying to keep up with the many and varied regulations imposed by the different municipalities. One naturally feels sorry for such ubiquitous imbibers, but it seems only proper that when one drinks in Rome, he ought to drink as the Romans do.

The question of preemption was before this court in the case of Salt Lake City v. Kusse, 97 Utah 113, 117, 93 P.2d 671, 673 (1939). The defendant there claimed that a city had no authority to pass an ordinance prohibiting driving an automobile under the influence of intoxicating liquor, since the State had already passed a statute making it a crime to drive a mo-

tor vehicle while under the influence of intoxicating liquor. The court said:

Does Sec. 57–7–14, R.S.U.1933, being of state wide application and designed to prevent driving anywhere in the state while under the influence of intoxicating liquor, prevent the enactment of an ordinance preventing in the cities the same thing?

The solution of this question depends on the following principles: *An ordinance dealing with the same subject as a statute is invalid only if prohibited by the statute or inconsistent therewith.* [Citations omitted.] (Emphasis added.)

Since the city is not prohibited from regulating clubs, and since there is no inconsistency between the ordinance and state law, it would seem that the State has not preempted the field in this regard.

This court had occasion later to look at the problem of preemption in the case of Salt Lake City v. Towne House Athletic Club, 18 Utah 2d 417, 424 P.2d 442 (1967), which case was decided before Sec. 11–10–1, U.C.A.1953, was amended. In that case it was said at pages 419–420 of the Utah Reports, 424 P.2d at pages 443–445:

The stipulation recites that the city claims the right to adopt the ordinance from * * * Section 10–8–80, U.C.A. '53, giving cities the revenue raising power by licensing businesses, and Sec-tion 10–8–81, U.C.A. '53, giving cities the power to license and regulate "social clubs, recreational associations, athletic associations" and the like. By their briefs and oral argument the parties considered the power asserted by the city to be regulatory rather than revenue producing, and we so consider it. * * *

* * * * * *

Sections 16–6–13 to 13.3 U.C.A. '53, enacted in 1955, establishes a procedure for regulating social clubs. By its terms this set of statutes is aimed at assuring that the clubs are organized in good faith as non-profit associations, that gambling is not allowed, and if liquor is stored or consumed thereat, that the Liquor Control Act is not violated.

Section 11–10–1, U.C.A. '53, enacted in 1959, delegates to cities the power to regulate "all establishments, associations and corporations," except those covered by Section 16–6–13 to 13.3, U.C.A. '53, who "operate a club, business or association which allows the customers, members or guests to possess or consume liquor on the premises, provided the license does not permit the licensee, operator or employee of either to hold, store, or possess liquor on the premises."

The trial court held that, although these statutes *might* be construed as a preemption to the State, as far as non-profit corporations are concerned, in the area of regulating the licensing of es-

tablishments to permit storing, possession and consumption of liquor, they do not preclude delegation to cities of the power to regulate such corporations or clubs in their conduct of other activities. We agree.

Now that Section 11–10–1 has been amended and provides that cities shall license all establishments that operate a club which allows liquor to be consumed, the case is stronger than when the section excluded those non-profit corporations organized under Chapter 6, Title 16, U.C.A. 1953.

The lower court was correct in both cases in holding that Salt Lake City has the authority to regulate clubs by ordinance. Section 16–6–14, U.C.A.1953, reads:

All peace officers shall have the right to enter the club rooms or meeting rooms of social clubs, recreational or athletic associations, or kindred associations, incorporated under the provisions of this chapter, for the purpose of determining whether any laws or ordinances are being violated therein.

The ordinance of Salt Lake City involved in this matter has a similar provision as it relates to clubs where liquor is consumed.

The lower court thought these sections were in violation of the constitutional right to be free from unreasonable search. I do not so regard them. If the establishment desires to have liquor consumed by its members and guests, it must comply with the law which grants the privilege. One requirement is that peace officers have the right to enter the club rooms and meeting rooms for the purpose of determining whether any laws or ordinances are being violated. The officer is not entering to make a search. No search is contemplated by the ordinance or by the statute. He simply enters to see what everybody else in there sees: whether the law is being violated. This is no more a search on the part of the officer than it would be on the part of any bystander who might be present therein. If the officer desires to make a search other than one incident to the making of a lawful arrest, he must secure a search warrant before making it.

The main opinion cites two cases, viz., Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). In See v. Seattle, the defendant appealed from the conviction of violating a city ordinance in that he refused to permit a representative from the city Fire Department to inspect his private warehouse. The Washington Supreme Court without a dissent affirmed the conviction, City of Seattle v. See, Wash., 408 P.2d 262, and it did so upon grounds more consonant with reason and common sense than those stated in the six to three United States Supreme Court

opinion which reversed the Washington court. We must bow to power when we would prefer to follow reason, and so I shall assume the See case to be the law as now imposed upon the states. However, I have no quarrel with the See case in connection with the instant case, for it is not in point.

The case with which we are here concerned does not involve a person who is accused of crime for denying entrance by an inspector into private property which he owns and has a right to own without license or leave. Rather, we are here considering the question of whether one who seeks the right to operate a club where liquor is to be consumed can enjoy that right without complying with the statutory conditions precedent thereto.

In the case of Camara v. Municipal Court, supra, prosecution under a municipal ordinance which made it a criminal offense to refuse to permit a building inspector to inspect private residences was restrained by the Supreme Court of the United States. In that case the Supreme Court used the same faulty reasoning as it did in See v. Seattle, supra. However, this case like the See case is not here in point.

I think it is time to put an end to the loud and raucous wailing of those who claim a constitutional right to hide behind locked doors and commit acts which they think are not appropriate for a policeman's eyes. Let them comply with the law or let them forego hiding from their law-abiding acquaintances. Are they the "men who loved darkness rather than the light; because their deeds were evil"?[1]

The ruling of the trial courts rejecting the contention of the Attorney General and of the private clubs that the ordinance is unconstitutional should be affirmed. However, the holding that Section 16-6-14 and the similar provision of the ordinance violate the constitutional right to be free from unreasonable search should be reversed.

No costs should be awarded.