466 P.2d 838

**SALT LAKE CITY, a municipal corporation, Plaintiff and Appellant,**

v.

**Joe WHEELER, David Boyd and Joe Jackson, Defendants and Respondents.**

**No. 11855.**

Supreme Court of Utah.

March 20, 1970.

7. 1 Utah 2d 375, 267 P.2d 768 (1954).

Jack L. Crellin, City Atty., Roger F. Cutler, Asst. City Atty., Salt Lake City, for appellant.

Robert M. McRae, of Hatch, McRae, Richardson & Kinghorn, Salt Lake City, for respondents.

HENRIOD, Justice:

This is a rather unorthodox appeal from a judgment holding Sec. 19–4–6, Revised Ordinances of Salt Lake City (1965), unconstitutional in three separate cases appealed from the City Court to the District Court, that somehow became consolidated for appeal. Affirmed with no costs awarded.

Defendants Boyd and Jackson at 2:15 one morning refused to give police officers permission to inspect the premises of the Regal Lounge, which was being operated under a city beer license. Defendant Wheeler at 8:30 p. m. of another day, also refused to allow officers similar inspection of the premises. No search warrant was served or attempted to be served on either occasion. Closing hour under the ordinance is 1:00 a. m.

The District Judge concluded that the ordinance was unconstitutionally vague and overbroad, permitting searches without a warrant so as to be offensive to the Fourth Amendment of the U. S. Constitution. Here is the subject ordinance:

Sec. 19–4–6. The police department shall be permitted to have access to all premises licensed or applying for license under this chapter, and shall make periodic inspections of said premises and report its findings to the board of commissioners.

The quoted language applies to businesses specified in Sec. 19–1–7 of the city ordinances, which includes "cafes, restaurants, public dining rooms, cafeterias, taverns, cabarets, private clubs, corporations and associations" having licenses for consumption of liquor on the premises.

The City urges that the ordinance is clear, not vague or overbroad, and constitutes a constitutional means for the control of liquor sale and consumption.

It seems obvious from a casual reading of the ordinance that, of all the municipal agencies, the police department alone is accorded the right of entry without a search warrant, to "inspect" any or *all* the premises for which the license is issued, without reservation or restriction as to the

private or public portions thereof, without any specified protection against a plenary power to prowl the premises. It is reasonably foreseeable that under some circumstances, where a warrantless entry may have been accomplished, an erstwhile right of an accused to suppression of evidence or his right of immunity from self-incrimination well might be foreclosed simply because the word "inspect" instead of "search" may be employed in the ordinance. Counsel implies that "inspection" may be something other than "search" in a Fourth Amendment sense. The authorities seem to dispel any such distinction by making the two words synonymous in both the ordinary and constitutional senses.[1]

Although the City urges that the "inspection" in effect has been limited to business hours, the ordinance nowhere proscribes such restraint. Such suggestion

hardly is convincing where in one of the very cases before us, the "inspection" was attempted at 2:15 a. m.,—after closing time, and the City in its own brief, while plugging for constitutionality of the ordinance, significantly said that "These taverns are required to close at 1:00 a. m. * * * Many infractions of the State and City laws occur after those hours [and] to limit the right of inspection to only business hours would make the City's right and power of regulation largely illusory." This seems to explode any mythical distinction between "browsing" inspection and "bruising" search, so far as Fourth Amendment concepts are concerned. One might ask: "Why would the City's power be illusory?" Another might answer that what with the restricted number of licenses issued and the comparative ease of obtaining a search warrant where an establishment may be suspect, what is wrong or onerous about

---

1. Black and Ballantyne Law Dictionaries and Websters International, under "search"; Camara v. Municipal Ct. of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); Colonnade Catering Corp. v. United States, 2 Cir., 410 F.2d 197, cert. granted, 396 U.S. 814, 90 S.Ct. 58, 24 L.Ed.2d 66 (Oct. 13, 1969), No. 108 Oct. Term, 1969, Feb. 25, 1970 (Douglas, J.), 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60; Vagabond Club v. Salt Lake City, 21 Utah 2d 318, 445 P.2d 691 (1968), where we said "In the Camara case the court observed that the question was not whether an *inspection* may be made, but whether it may be made without a warrant. The court held that *searches* of this kind 'are significant intrusions upon the Fourth Amendment' "; Vol. 21A, Words and Phrases, Perm.Ed., "Inspect; Inspection," p. 462, where it is said "No difference between the words *inspect* and *search* exists in regard to the provisions of the 4th Amendment prohibiting unreasonable *searches* of homes, and the Inspector * * * was required under the amendment to obtain a warrant to *inspect* * * *"; and again, in Oklahoma A.B.C. Bd. v. McCulley, (Okl.), 377 P.2d 568 (1963), it is stated that the right to *inspect* and the right to *search* were indistinguishable under the Act providing that a search warrant was unnecessary for agents to enter and *inspect* the *licensed* premises. (Emphasis added.)

requiring such a warrant? It would seem that enlightened peace officers would prefer such procedure in order to inoculate themselves against possible nuisance litigation.

Withal that is said above, we believe and conclude that our own recent decision in Vagabond Club v. Salt Lake City[2] is dispositive of the instant case. There the city ordinance required that the proprietor furnish a key to the police department for the purpose of entering and "inspecting" the premises. We concluded that it was offensive to the Fourth Amendment, citing with approval Camara v. Municipal Court of City and County of San Francisco, and See v. Seattle, which struck down similar legislation presuming to permit warrantless "inspections." The only substantial difference between the Vagabond case and this case, is that in the former the proprietor was required to furnish the police with a key to unlock the door at any time from the *outside,* while in the instant case the ordinance requires the proprietor to unlock the door at any time from the *inside,*—all to accomplish the same objective,—a look-see of *all* the premises. We are not constrained to overrule the Vagabond case.

At oral argument, counsel for the City suggested deferment of the instant case until Colonnade Catering Corp. v. United States[3] came down from the U. S. Supreme Court. We followed the suggestion. The opinion in that case was published on February 25, 1970. It reversed the Circuit Court decision, upon the rationale of which the City considerably relied. The case lends no comfort to the City.

CALLISTER and TUCKETT, JJ., concur.

ELLETT, Justice (dissenting):

I dissent. The ordinance seems crystal clear to me. The main opinion seems to fear that the police may try to inspect after business hours. If the tavern remains open after business hours, a law is being violated,[1] and naturally the bartender would not want the police to make any kind of an inspection under those circumstances.

City ordinances, like state statutes, are entitled to the presumption of regularity;[2] and as Justice Henriod so cogently said in Norton v. Department of Employment Security, 22 Utah 2d 24, 26, 447 P.2d 907, 908 (1968):

The presumption of constitutionality of a statute transcends its destruction unless the latter so obviously is obsessed with cupidity and unreason as to have no substantial basis for its existence. We believe that is not the instant case.

---

2. 21 Utah 2d 318, 445 P.2d 691 (1968),— See footnote 1, supra.
3. See footnote 1, supra.

1. Section 19-3-14, Revised Ordinances of Salt Lake City 1965.
2. 16 C.J.S. Constitutional Law §§ 98 and 99.

Without quoting in extenso from decisions which support our conclusion, we commend the reader to an examination of a leading case which seems to be apropos here,—Carmichael v. So. Coal & Coke. [301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327 (1937).]

Section 32–4–17, U.C.A.1953, as amended, gives the power to cities to prohibit the sale of beer or to permit it subject to restrictions and regulations. Any right to sell beer is to be found in the city ordinance and not in any constitutional provision.

One desiring to engage in the business of dispensing light beer must secure a license to do so from the city and ought to comply with the rules and regulations prescribed as a condition of securing the license, and especially is this true where the only requirement is that the licensee not violate the law and that he permit agents of the city to inspect the premises so licensed, to ascertain that such is the fact.

There is nothing unconstitutional about permitting an inspection of a business as a condition of allowing it to exist when a license to engage in that business may be denied outright.

The requirement of the ordinance in question is that the police department shall be permitted to have access to the licensed premises and to make periodic inspections. When an officer enters the licensed premises for the purpose of inspecting the same, he is doing so for the purpose of determining whether any laws or ordinances are being violated. If the defendants herein were not violating the law or permitting it to be violated, they could have no objection to the presence of the officer. In truth, his presence would most likely have a wholesome effect on any errant customers who might be breaking the law or planning to do so.

During the 30 years and more of my tenure on the trial bench, it was my observation from listening to the evidence that a very high percentage of all criminal cases prosecuted had their genesis in a beer tavern and by defendants who had consumed beer and other alcoholic drinks for long periods of time before and during the planning of the committed crime. Thus the need for frequent inspection of beer taverns by police officers seems to me to be apparent.

An applicant for a license must agree to permit inspection by police officers in order to secure the license. If the ordinance is overly broad and not clear and unconstitutional as held by the lower court and as set out in the main opinion, then why is not the entire ordinance invalid and the defendants herein guilty of dispensing beer unlawfully, since a license issued pursuant to a void ordinance would also be invalid?

The ordinance, however, is valid. If the inspecting officer himself violates the law

and makes an unwarranted and unlawful search and seizure and thereby discovers evidence that a crime is being committed, then and in that event the rules of evidence should give all the protection to a guilty bartender to which he is entitled when he is tried for his crime. If no evidence of an incriminating nature is discovered by such an unlawful search, then the innocent bartender has a civil remedy for the trespass. In any event, there is no reason to hold that a proper inspection cannot be made.

If the ordinance is susceptible of two constructions, one of which will render it invalid and the other of which will permit it to stand, then it is our duty to give that construction to the ordinance which will allow it to be held constitutional. The law in this regard is set out in 16 C.J.S. Constitutional Law § 98 as follows:

> If a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional in whole or in part, or raise grave and doubtful constitutional questions, the court will adopt that construction of the statute which, without doing violence to the fair meaning of language employed by the legislature therein, will render it valid, and give effect to all of its provisions, or which will free it from doubt as to its constitutionality, even though the other construction is equally reasonable, or seems the more obvious, natural, and preferable, interpretation; * * *.

The reason for this rule of construction is that there is a presumption that legislative bodies in enacting statutes or ordinances do not intend to violate constitutional provisions. There is also a presumption that officers will obey the law. This ordinance can, therefore, be held bad only if we read into it something which cannot be found therein.

The judgment of the trial court dismissing the charges should be reversed and the cases remanded for the purpose of proceeding with trials on the complaints filed.[3]

CROCKETT, C. J., concurs in the dissenting opinion of Mr. Justice ELLETT.

3. See Boyer v. Larson, 20 Utah 2d 121, 433 P.2d 1015 (1967).